408 So.2d 476 (1981)
Alan McFADDEN, Delores Edwards and Carnell Young
v.
STATE of Mississippi.
No. 52909.
Supreme Court of Mississippi.
December 16, 1981.
As Modified on Denial of Rehearing January 20, 1982.
*477 J. Kennedy Turner, Philadelphia, for appellants.
Bill Allain, Atty. Gen. by Karen Gilfoy, Asst. Atty. Gen., Jackson, for appellee.
Before ROBERTSON, P.J., and BROOM and HAWKINS, JJ.
ROBERTSON, Presiding Justice, for the Court:
Alan McFadden, Delores Edwards and Carnell Young were jointly indicted in the Circuit Court of Neshoba County for the crime of armed robbery of City Jewelry, Inc., on July 8, 1980.
In the indictment they were charged with willfully, unlawfully and feloniously taking men's and ladies' diamond rings, diamond wedding sets, and diamond clusters valued at $49,000, the property of City Jewelry, Inc., by putting Mrs. Waudine Whittle (an employee of City Jewelry, Inc.) "in fear of immediate injury to her person by the exhibition of a deadly weapon, namely, a pistol."
After hearing and disposing of a number of motions filed by and presented by defense counsel on behalf of defendants, a full trial was held and the following verdict rendered:
"We, the Jury, find the Defendants Alan McFadden, Delores Edwards and Carnell Young, guilty as charged and fix their punishment at imprisonment in the penitentiary for life."
The court accepted the verdict of the jury and imposed on each defendant a sentence of life imprisonment in the Mississippi State Penitentiary.
Defendants assign as error:
I. The right to a fair trial and due process of law was violated by the State of Mississippi through the action of the lower court by the refusal of the lower court to grant *478 the appellant's motion for continuance to allow for reasonable time to prepare for trial.
II. The lower court erred in partially denying item 3, and then denying totally items 4, 5, and 8 of the appellants' motion for discovery and production.
III. The trial court erred in overruling the appellant, Carnell Young's motion for a severance.
IV. The lower court erred in overruling the appellant's motion to suppress in-court identification which was irreparably tainted by an unconstitutional and prejudicial pretrial confrontation and which was not shown to have a source independent of the pretrial identification.
V. The court erred in overruling the appellant, Carnell Young's motion for a directed verdict in that the state of Mississippi's case against said appellant failed to make out a prima facie case; or, alternatively, the court erred in refusing to grant a new trial because the verdict of the jury went against the evidence in the case.
VI. The trial court erred in overruling the appellant, Carnell Young's, motion for dismissal, or mistrial, on the ground that the jury was polled by the court improperly and without authority of law.
VII. The indictment is insufficient as a matter of law in that it fails to set forth all of the elements of the offense charged; specifically, the indictment fails to charge an intent to steal.

I.
The joint indictment was returned on September 16. On that day the court, noting the poverty of the defendants, appointed the public defender, J. Kennedy Turner, to represent defendants.
On September 18, defense counsel filed a "Motion to Suppress Identification Testimony," a detailed 3-page "Motion for Discovery and Production," and a "Motion to Quash." On September 19, defense counsel filed these additional motions: "Motion for Severance as to Carnell Young," a "Motion for Continuance", and a "Motion for Special Venire."
In the Motion for Continuance, defense counsel stated, among other things, that the case was set for trial on Monday, September 22, 1980, that each defendant intends to offer "separate and distinct alibis for the time in question", that counsel, as public defender, was busy on other cases, and asked for a continuance to the next term of court.
Mississippi Code Annotated section 11-7-123 (1972) provides:
"On all applications for a continuance the party shall set forth in his affidavit the facts which he expects to prove by his absent witness or documents that the court may judge of the materiality of such facts, the name and residence of the absent witness, that he has used due diligence to procure the absent documents, or presence of the absent witness, as the case may be, stating in what such diligence consists, and that the continuance is not sought for delay only, but that justice may be done. The court may grant or deny a continuance, in its discretion, and may of its own motion cross-examine the party making the affidavit. The attorneys for the other side may also cross-examine and may introduce evidence by affidavit or otherwise for the purpose of showing to the court that a continuance should be denied. No application for a continuance shall be considered in the absence of the party making the affidavit, unless his absence be accounted for to the satisfaction of the court. A denial of the continuance shall not be ground for reversal unless the supreme court shall be satisfied that injustice resulted therefrom." (Emphasis added).
The motion for continuance did not comply with the mandatory statutory requirements in that the affidavit for continuance *479 failed to comply with statutory requirements.
In Barnes v. State, 249 So.2d 383 (Miss. 1971), this Court noted the difference between a motion for continuance based on the lack of reasonable time for an attorney to prepare for trial and an application for continuance based on the ground of absent witnesses.
"The application for continuance upon the ground that the attorney for the defendant has not had a reasonable time to prepare for trial is different from an application for continuance on the ground that there is an absent witness. When a witness is absent the movant must continue his effort to obtain the witness after having filed the motion required by Section 1520 Mississippi Code 1942 Annotated (1956). See: King v. State, 251 Miss. 161, 168 So.2d 637 (1964). On the other hand, a motion for continuance upon the ground that an attorney has not had sufficient time to prepare for trial is subject to proof and also as to facts as they may appear from that which is known to the trial court." (249 So.2d at 384).
No proof whatsoever was offered as to the workload of the public defender. The trial court, of course, was personally cognizant of the public defender's workload, that the September term was only 12 days long, and that the next term would not be until February, 1981.
Applying the rule stated in Jackson v. State, 254 So.2d 876 (Miss. 1971), we cannot say the trial judge abused his discretion in refusing a continuance in this case.
The Motion to Suppress Identification Testimony was called for hearing at 8:30 a.m., Tuesday, September 23, 1980. In this motion, the defendants contended that they were not represented by counsel at the pretrial confrontation (line-up on September 11, 1980), and that the line-up was unnecessarily suggestive and conducive to irreparable mistaken identification.
The defendants had been placed in jail at Ackerman in Choctaw County on a bank robbery charge. According to the testimony of the four police officers who transported them from Ackerman to Philadelphia for the line-ups, after their Miranda rights had been read and explained to them, they consented to come to Philadelphia for the line-ups.
The court, after hearing the testimony of all three defendants, three other witnesses and the four police officers, overruled the motion to suppress.
The motions for continuance, severance as to Carnell Young, and a special venire, were also heard on September 23. The motion for special venire was sustained by order dated September 23, 1980, and the case set for trial on Friday, September 26.
The order also provided:
"[T]hat the Sheriff of this County shall serve on the attorney for the Defendants, not later than 8:00 a.m., Thursday, September 25, 1980, a certified copy of the venire facias showing the service on each of the persons whose names are so drawn, ..."
The six motions filed by defense counsel were vigorously and ably presented by defense counsel and carefully considered by the court and, after disposition of these motions, a full trial was held on September 26, 10 days after indictment, and 10 days after appointment of counsel, and three days after the presentation, argument and decision on the six pre-trial motions.
On September 26, the date set for trial, defense counsel announced "ready". The two-volume record reflects that appointed counsel (the Public Defender) ably, skillfully, and vigorously defended defendants. This Court is satisfied that the defendants were ably, intelligently, skillfully and vigorously represented by their appointed counsel (the public defender and an experienced criminal lawyer) at the trial, and that no injustice resulted from the denial of the motion for continuance.

II.
The court, after carefully hearing and considering the motion for discovery and *480 production, granted discovery of all witnesses and documents that it was required by statute and by Rule 4:06, Uniform Criminal Rules of Circuit Court Practice, to grant. See Scott v. State, 359 So.2d 1355 (Miss. 1978).
The court was correct in partially denying item 3, and in totally denying items 4, 5 and 8 of defendants' motion for discovery and production.

III, V, AND VI.
These assignments of error have to do with Carnell Young only, III being with reference to the court's overruling Young's motion for severance, V having to do with the court's overruling a motion for a new trial because the verdict of the jury was against the weight of the evidence, and VI having to do with the court's overruling of Young's motion for a dismissal or mistrial because the court sua sponte polled the jury to determine whether the first verdict finding Carnell Young not guilty was the verdict of each juror.
In view of our decision on V, it will be unnecessary for us to discuss and rule on III and VI.
After carefully reviewing the evidence, we are of the opinion that the verdict of the jury finding Carnell Young "guilty as charged" and fixing his punishment at life imprisonment is against the overwhelming weight of the evidence. The only witness against Young was T.J. Collier, who identified Young as being in front of City Jewelry talking with the other two defendants and another unidentified black female a few minutes before the robbery. Collier did not see Young go into the jewelry store, nor did any of the other four witnesses (who positively and unequivocally identified McFadden and Edwards) identify Young as being in the jewelry store at any time during the robbery. No other evidence connected Young with the crime.
At the close of the case, the court should have granted Jury Instruction D-1(a) "to find the Defendant Carnell Young not guilty."

IV.
In this assignment of error, defendants contend that the court erred in overruling their motion to suppress the in-court identification of them because the in-court identification was "irreparably tainted by an unconstitutional and prejudicial pretrial confrontation and which was not shown to have a source independent of the pretrial identification."
Mrs. Waudine Whittle was an employee of the jewelry store and observed both McFadden and Edwards face to face during the robbery and when she was ordered to the back of the store and ordered to lie down under threat of great bodily harm. She positively and unequivocally identified both McFadden and Edwards.
Judy O'Berry, a customer, positively and unequivocally identified McFadden as being the one who ordered her to the back of the store and ordered her to lie flat on the floor with her 10-month old child, and threatened her with death if she didn't do so.
Gwendolyn Thompson, a customer, positively and unequivocally identified McFadden and Edwards as being the robbers.
Sylvia Franklin, an employee of City Jewelry, who returned from lunch during the robbery, positively and unequivocally identified McFadden as being one of the robbers.
In this case, not one but four eyewitnesses made positive in-court identifications of McFadden and Edwards. It is undisputed that the robbery occurred about Noon and the jewelry store was well lighted. Defendants McFadden and Edwards were inside the store about 15 minutes.
Each of these four witnesses had an excellent opportunity to personally view the robbers during the actual commission of the robbery. Each was positive, certain, and unequivocal in her identification of McFadden, or Edwards, or both McFadden and Edwards.
We are of the opinion that the trial court did not err in overruling the defendants' *481 motion to suppress the in-court identification of McFadden and Edwards because of the pre-trial line-ups (where there was some disparity in the heights and weights of the participants). See Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); United States v. Barron, 575 F.2d 752 (9th Cir., 1978); Oliver v. State, 285 So.2d 897 (Miss. 1973); Poole v. State, 216 So.2d 425 (Miss. 1968).

VII.
In the last assignment of error, defendants contend that "the indictment is insufficient as a matter of law in that it fails to set forth all of the elements of the offense charged; specifically, the indictment fails to charge an intent to steal."
Mississippi Code Annotated section 97-3-79 (1972) defines the crime of armed robbery. The indictment charged that Alan McFadden, Delores Edwards, and Carnell Young:
"[D]id willfully, unlawfully, and feloniously, take from and from the presence of Mrs. Wadean Whittle, a human being against her will by putting the said Wadean Whittle in fear of immediate injury to her person by the exhibition of a deadly weapon, namely, a pistol, ..."
This Court said, in Thomas v. State, 278 So.2d 469 (Miss. 1973): "[W]e hold that the words `unlawfully' and `feloniously' are sufficient to make the necessary charge of `intent to steal'." 278 So.2d at 471.
There is no merit in this assignment of error.
For these reasons, we are of the opinion that the conviction and sentence of McFadden and Edwards should be affirmed, and the conviction and sentence of Carnell Young should be reversed and Young discharged.
AFFIRMED AS TO McFADDEN AND EDWARDS, REVERSED AS TO CARNELL YOUNG AND YOUNG DISCHARGED.
PATTERSON, C.J., SMITH, P.J., and SUGG, WALKER, BROOM and LEE, JJ., concur.
HAWKINS and BOWLING, JJ., dissent.
HAWKINS, Justice, dissenting.
I respectfully dissent from the majority opinion as to the defendants Alan K. McFadden and Delores Edwards, and I concur with the result reached as to the defendant Carnell Young, but for a different reason than stated in the majority opinion.
These three defendants were jointly indicted September 16, 1980. None of them employed counsel. There is no order in the record showing their arraignment, or showing them indigent or unable to employ counsel, but they were represented by a local attorney who is a public defender in Neshoba County.
On September 18, 1980, their attorney filed motions to suppress identification testimony, for discovery and production, and to quash the indictment. The motion for discovery was sustained in part by the court, the others were overruled. A motion for continuance was filed September 19, 1980, together with a motion for a special venire and motion for a severance as to the defendant Young.
On September 23, 1980, a hearing was held on the motion to suppress the identification of the defendants. On the same day orders were entered overruling the motions for a severance and motion for a continuance. Also on this date an order was entered for a special venire of 40 persons returnable at 8:00 a.m., September 26, 1980.
The motion for continuance sets forth the appointment of one lawyer by the court for all three defendants, and the case being set for trial September 22, 1980. I add parenthetically there is no record of this, except the statement in the motion and a later comment by the court during trial. The motion proceeds to allege there is insufficient time to prepare the defense, reciting there were a number of alibi witnesses, some 15 state witnesses, and counsel needed more time to prepare. The motion was sworn to by counsel.
*482 No proof whatever was offered in support of this motion.[1]
On September 26, 1980, the case was called and both sides announced ready for trial. A jury was then selected and the case proceeded to trial.
During trial defense counsel approached the bench, and there was an off the record discussion, following which the jury was excused. Out of the presence of the jury the following transpired:
BY THE COURT:
Mr. McFadden, you had something you wanted to address to the Court?
BY THE DEFENDANT McFADDEN:
Yes, sir, I do. Your Honor, we would like the proper time to prepare our case, to get witnesses here to testify in our behalf. We are going to be sent to the penitentiary and the people are sitting here under oath and lying. We don't have any defense at all. I mean, I don't  I feel that I'm not getting a fair trial. My lawyer is overworked. I mean, he doesn't have time to get out and try. He needs time to work on the case because this is our life. It's not something to play with as far as I'm concerned.
BY THE COURT:
No one is playing with your case at all, Mr. McFadden. I think your lawyer has capably and ably represented you.
BY THE DEFENDANT McFADDEN:
I no longer want him as our attorney.
BY THE COURT:
He's the Public Defender. On the day that you were arraigned, I appointed Mr. Turner to represent you. You established through your answers that you were unable to afford an attorney. He has summoned witnesses for you, he has filed a motion, he has ably presented those motions. The request of McFadden comes at five minutes to 12:00 o'clock. I have already heard the testimony of Mrs. Jim Whittle, Mrs. Morgan Hardy, Mr. Jim Whittle, Jr., Mr. Morgan Hardy, and Mrs. Judy O'Berry. We have started the testimony earlier this morning. The Defendants have been present at all stages of the trial of this case and the request of this Defendant will be denied.
BY THE DEFENDANT McFADDEN:
This is the request of all three of us, Your Honor.
BY THE COURT:
That is what you say.
BY THE DEFENDANT EDWARDS:
Mine, too.
BY THE COURT:
Do you want another attorney or what? You want to employ one?
BY THE DEFENDANT EDWARDS:
If we can get one.
BY THE COURT:
Wait a minute, lady. Stand up when you address the Court.
BY THE DEFENDANT EDWARDS:
If he can go on, I do not want to go on.
BY THE COURT:
You want to employ an attorney?
BY THE DEFENDANT EDWARDS:
I will do my best to see if I can get another one.
BY THE COURT:
I'm not going to continue the case. I will make attorneys available to you during this lunch hour. I'll not discharge this attorney either, but if you want to employ one to join with Mr. Turner, I'll permit that.
BY THE DEFENDANT McFADDEN:
We have been trying to raise money to defend us, people that know we are innocent and accused of a crime.
BY THE COURT:
All right. Bring in the Jury.

I.
Did the trial judge err in trying the case without giving the defendants time to prepare a defense?
*483 In the brief for the appellants, counsel as his first point argues the court erred in not granting a continuance, and in support of this very strong assignment he states that from the time of arraignment September 16, until the following Tuesday, September 23, he was in court on other court appointed cases, interviewing witnesses, and attempting to structure defenses on all those cases. He states further from September 23, until the trial of this cause on September 26, he was actually in trial "each and every day." Here is his calendar of events:

September 23 - defending Boyd v. State (now
 on appeal to this Court);
September 24 - defending Cole v. State (now
 on appeal to this Court);
September 25 - defending Yates v. State (now
 on appeal to this Court).

He then proceeds to inform this Court of the serious nature of the above cases occupying his time.
In view of these allegations, I am perplexed by the following conduct of counsel shown by the record:
1. He offered no proof in support of his motion for continuance.
2. He never renewed his motion for continuance following its filing. None of the information shown in his brief appears anywhere in the record.
3. On the day set for trial, September 26, the record states: "both sides announced ready for trial."
4. Even when his clients told the trial judge out of the presence of the jury their lawyer had not had time to prepare the case for trial, counsel himself remained silent.
5. In his motion for a new trial, counsel did not see fit to specifically assign the refusal to grant his motion for continuance as error.
This Court has repeatedly held errors preliminary to, or during trial not brought to the attention of the trial judge will not be considered on appeal. Ponder v. State, 335 So.2d 885 (Miss. 1976). This is especially true of a motion for a continuance, unsupported by any proof in the record. Fermo v. State, 370 So.2d 930 (Miss. 1979). We cannot ignore plain error, however, and this Court has the right to take notice of harmful errors appearing in the record; and further, when justice requires, take the appropriate action to correct such errors. Newburn v. State, 205 So.2d 260 (Miss. 1967); Kendall v. State, 217 So.2d 35 (Miss. 1968); Burnett v. State, 285 So.2d 783 (Miss. 1973).
In my view the trial court should not have placed the defendants on trial in such a short time, and it was reversible error for the court to do so.
The record shows these three defendants were taken from a Choctaw County jail, indicted on September 16 in Neshoba County, where they were apparently strangers. The court appointed a lawyer for them, also a stranger to them. They remained in jail. Ten days later they were placed on trial, and in a trial lasting one day, convicted and each given a sentence of life imprisonment in the state penitentiary.
To me such action by the trial court was precipitate and unfair to three defendants tried jointly on a crime as serious as this, and probably unfair to the state.
While the time necessary to prepare for the defense of a case is not subject to mathematical formula, under the circumstances of this case I cannot conceive any possibility of defense counsel having time to prepare a creditable defense. He had time for a facade, but no more. In profound deference I suggest able trial lawyers in this state will be appalled at any suggestion by this Court that the counsel for defendants had time to prepare an adequate defense, and there was no denial of due process in putting these defendants to trial in such a short time.
In Cruthirds v. State, 190 Miss. 892, 2 So.2d 145 (1941), we stated:
Section 26 of the Constitution of Mississippi guarantees to every person a fair and impartial trial. A fair and impartial trial includes a reasonable opportunity to prepare for trial.
Id. at 896, 2 So.2d 145.
Then, we quoted with approval, p. 897, the following language from Coker v. State, 82 Fla. 5, 89 So. 222 (Fla. 1921):

*484 "Justice requires, and it is the universal rule, observed in all courts of this country, it is most sincerely to be hoped, that reasonable time is afforded to all persons accused of crime in which to prepare for their defense. A judicial trial becomes a farce, a mere burlesque, and in serious cases a most gruesome one at that, when a person is hurried into trial upon an indictment charging him with a high crime, without permitting him the privilege of examining the charge and time for preparing his defense. It is unnecessary to dwell upon the seriousness of such an error; it strikes at the root and base of constitutional liberties; it makes for a deprivation of liberty or life without due process of law; it destroys confidence in the institutions of free America and brings our very government into dispute."
See also, Barnes v. State, 249 So.2d 383 (Miss. 1971); Martin v. State, 312 So.2d 5 (Miss. 1975).
The language in Geiler v. Commission on Judicial Qualifications, 10 Cal.3d 270, 110 Cal. Rptr. 201, 515 P.2d 1 (1973), also seems appropriate:
No more fragile rights exist under our law than the rights of the indigent accused; consequently those rights are deserving of the greatest judicial solicitude.

II.
As to the defendant Young, I concur in the result reached by the majority opinion that he should be discharged, but for a different reason. Because of the unusual circumstances involving the jury verdict in this case, I think something should be stated by this Court in the sanguine hope such a problem may be obviated for circuit judges in future instances.
Following instructions by the court and argument of counsel, the jury retired at 3:15 on the day of trial to deliberate its verdict. At 4:50 p.m. the jury returned to the courtroom.
The circuit judge told the foreman of the jury to listen to him carefully, and give a yes or no answer. He then asked if the jury had been able to agree upon a verdict. The foreman answered "yes."
The court then directed the jury to hand the envelope with their verdicts to the clerk. This was done.
The court then stated: "Read the verdicts. File them first." The record states the verdicts were filed by the clerk.
The clerk then read the following verdicts:
"We, the jury, find the Defendant, Carnell Young, not guilty." "We, the jury, find the Defendants, Allen (sic) McFadden and Delores Edwards, guilty as charged and fix their punishment at imprisonment in the penintentiary (sic) for life."
The court then directed the rest of the documents be handed to the clerk.
Following the above, the court asked the question: "Are these your verdicts?"
A juror answered, "no." The court then asked: "These are not your verdicts?" A juror replied, "No, sir."
The court then directed the jury be given two clean sheets of paper, and instructed the jury to return to the jury room, with the admonition their verdicts "must be unanimous."
The foreman then asked the judge, "Where we have a hung jury, what are the instructions in that case?" The court replied he would let them deliberate further.
At 5:30 the jury reported it was able to agree on a verdict as to two of the defendants, but unable to agree on the third defendant. Upon inquiry by the court, the jury reported it was divided 11 to 1. The court then gave the following instruction:
BY THE COURT:
If you would listen to me very carefully while I read this to you.
I know that it is possible for honest men and women to have honest different opinions about the facts of a case, but if it is possible to reconcile your differences of opinion and decide this case, then you should do so. Accordingly, I remind you that the Court originally instructed you *485 that the verdict of the jury must represent the considered judgment of each juror. It is your duty as jurors to consult with one another and to deliberate in view of reaching agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but only after each impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if you are convinced it is erroneous, but do not surrender your honest convictions as to the weight or effect of the evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict. Please continue your deliberation.
With that, ladies and gentlemen, I will let you retire to the jury room.
The jury retired and at 5:35 p.m. the foreman came before the judge and asked if the jury was unable to agree as to a verdict on the third defendant, what would be the disposition of the case. With both sides assenting, the court replied he would declare a mistrial as to this one defendant.
The foreman returned to the jury room, and at 6:10 p.m. one verdict was returned, reading as follows:
"We, the jury, find the Defendants, Allen (sic) McFadden, Delores Edwards, and Carnell Young, guilty as charged, and fix their punishment at imprisonment in the penintentiary (sic) for life."
Two further observations should be made. When the judge was initially instructing the jury, he told them all twelve had to agree before a verdict of guilty could be returned. Also, a very weak case was made against the defendant Young. The only testimony connecting him in any way with the crime was one witness who testified he saw Young in the company of McFadden and Edwards and other blacks on the street in front of a store adjacent to the jewelry store about the time of the robbery, and another witness who was in the jewelry store at the time of the robbery testified one of the unidentified robbers, "had the build and everything" of Young.
Was the verdict of "not guilty," first rendered by the jury, binding upon the court?
Of course, a court can instruct a jury to return to the jury room and correct a defective verdict, such as one not in accord with the instructions of the court, or for some error apparent on its face. Serio v. City of Brookhaven, 208 Miss. 620, 45 So.2d 257 (1950). Also, as the verdict is being read, we have held that if a juror speaks out that the verdict is wrong, the court may send the jury back for further deliberation. Anderson v. State, 231 Miss. 352, 95 So.2d 465 (1957).
This is not such a case. The trial judge carefully asked the jury if they had agreed upon a verdict. The foreman responded "yes." The court directed the verdicts be handed to the clerk. He then instructed the clerk to file them and read them.
The clerk read the verdicts, worded precisely in accordance with the instructions and on the issue presented for them to decide. One verdict found the defendant not guilty. The other verdict found the remaining defendants guilty.
The court then directed the jury to hand the remaining papers to the clerk. During this entire time no juror voiced any objection.[2] The court then asked the jury, "Are these your verdicts"?
It was only then, after the verdicts had been filed, read in open court, and accepted that some juror, galvanized by the current of the court's question, said "no."
There were three defendants. This Court has no way of knowing whether the dissatisfaction was with the verdict as to Young, or the other two defendants. Furthermore, we do not know if this dissatisfaction was an afterthought of a juror after initially voting to return a verdict of not guilty.
In any event, under the facts of this case I believe the die was cast, the Rubicon crossed, when the jury verdict was filed and *486 read in open court finding Young not guilty.
Since we have no way of knowing from the record (a) whether or not the verdicts when read represented the true verdicts of the jurors reached in their deliberations in the jury room, and whether or not the dissatisfaction arose from a juror who had changed his mind after coming into the courtroom, and having the verdicts read, or (b) whether the dissatisfaction was as to the verdict finding Young not guilty, the verdict of not guilty reached as to Young was final and binding, in my view.
I do not know whether this Court should or could set forth a map to guide a court in determining at the fateful moment a jury is brought into court to announce its verdict, precisely when the court may, and when the court may not send the jury back for further deliberations. The difficulty in defining the boundary is the best reason for a few more cautionary questions from the circuit judge to the jury before receiving the verdict in open court.[3] The problem would then be avoided. In any event, in my view, the verdict of not guilty rendered under the circumstances of this case clearly crossed that line.
Although the facts are different, the language in State v. Chambliss, 142 Miss. 256, 267, 107 So. 200, 202 (1925) is helpful here:
It has never been the practice in this state and, so far as we are advised, in other states having similar constitutional provisions for trial by jury in criminal cases to that embraced in section 26 of the constitution of Mississippi to permit the court to refuse to accept a verdict complete in substance and responsive to the issues.
The right of trial by jury is one of the most sacred constitutional rights that a citizen has, and it would have but little value were it in the power of the trial judge to refuse to receive it or to act upon it when it is received, provided it is in due form and responsive to the issues.
* * * * * *
A trial by jury has been the greatest instrument of liberty in the history of English and American government, and was greatly esteemed at the time of the Revolution. No country ever lost its liberty where an independent jury trial existed. No country retained its liberty where it was abandoned.
Id. at 272, 107 So. at 204.
For the reasons stated, the initial jury verdict as to Young, being responsive to the instructions, was final, and Young should have been discharged when the verdict was returned in open court and filed.
I reiterate, with great respect for all parties concerned, that the case appears to me to have gone to trial before either side was properly prepared. Thus, the result before us.
BOWLING, J., joins in this dissent.
NOTES
[1] The order overruling the motion for a continuance (R. 15) recites "the Court having heard evidence in support of said motion," but this language is not supported by transcribed proof in the record.
[2] Although the actual time span may have been brief, it was pregnant with meaning.
[3] No criticism is implied of the trial judge in this case, who manifestly exercised considerable care before receiving the verdict. This case simply again reminds us that we learn most by experience.