Alan K. McFADDEN,
Petitioner–Appellant,

v.

Donald CABANA, Superintendent,
Mississippi State Penitentiary,
Respondent–Appellee.

No. 87–4512.

United States Court of Appeals,
Fifth Circuit.

Aug. 12, 1988.

Robert W. Smith, Biloxi, Miss., for petitioner-appellant.

Donald G. Barlow, Robert L. Gibbs, Asst. Attys. Gen., Jackson, Miss., for respondent-appellee.

Before RUBIN, GARZA, and JONES, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

A Mississippi state prisoner petitions for a writ of habeas corpus, seeking to overturn his conviction for armed robbery. He raises three claims for relief: (1) he was denied due process when the trial court refused his motion for continuance and placed him on trial 10 days after his indictment; (2) his trial counsel rendered ineffective assistance by failing to support the motion for continuance with specific proof or to renew it after it had been denied, failing to ascertain the statements of possible alibi witnesses, and announcing he was ready for trial when in fact he was not; and (3) the in-court identification of McFadden as the robber was tainted by an impermissibly suggestive and unreliable out-of-court identification lineup. After an evidentiary hearing before a federal magistrate, the district court denied the petition.

Although McFadden was apparently "railroaded" to trial and was not accorded adequate time for preparation, he still, after having seven years since his trial to find evidence and after having been accorded an evidentiary hearing, has not produced any specific evidence showing a reasonable probability that the result would have been different had the trial been conducted less precipitately. We therefore affirm the district court's denial of the writ.

I.

On September 11, 1980, Alan McFadden was in jail in Choctaw County, Mississippi, on charges unrelated to the conviction from which he now seeks relief. Officers from nearby Neshoba County came and took him (he claims involuntarily, the State claims voluntarily) to a police lineup. The lineup consisted of four men including McFadden, all of them black. McFadden claims, and the State does not dispute, that while he is only 5'6" and weighs 130 pounds, two of the other men in the lineup were 6'6" and 6'5" and weighed almost 200 pounds each; the fourth, McFadden's accomplice, was 5'10".

On September 16, McFadden and three other persons were indicted for the July 8 armed robbery of a jewelry store in Philadelphia, Mississippi, in Neshoba County. On the day of the indictment, the trial court noted the defendants were indigent and appointed a public defender to represent them. The public defender filed six motions during the next three days, including a motion to suppress the identifications

based on the lineup and a motion for a continuance to the next term of the court, which was to begin in February 1981. The motion for continuance stated that each defendant intended to offer a separate and distinct alibi for the time of the crime and that the public defender was busy on other cases—indeed he was on trial in three different cases on the three days immediately preceding the trial in this case.[1] The court denied each motion.

Ten days after the indictment, on September 26, the case came up for trial, and the public defender announced he was ready. At the one-day trial, four eyewitnesses to the robbery, including two store employees and two customers, "positively and unequivocally" identified McFadden as one of the robbers. The robbery had taken place at about noon, the store had been well-lit, and the robbers had been in the store for about 15 minutes.[2] McFadden's attorney cross-examined each eyewitness concerning her view of the robbers and her identification of them at the lineup. The attorney, however, called only three witnesses briefly to establish the disparity in the heights and weights of the lineup participants, and he presented no alibi evidence.

Toward the end of the State's evidence, McFadden and the other defendants asked the court to appoint a new attorney and to grant them time "to get witnesses here to testify on our behalf." McFadden claimed he had been trying to hire private attorneys "but they won't do anything until we get the money." The court denied the request, stating that the public defender had "ably" conducted the defense, but said he would permit a hired attorney to join the defendants' representation.

At the end of the day, the jury convicted McFadden and the other defendants of armed robbery and sentenced each to life imprisonment. The Mississippi Supreme Court affirmed McFadden's conviction and sentence by a 6–2 vote,[3] and McFadden was later denied state habeas relief. In 1985,

he filed a federal habeas petition. The district court referred the petition to a magistrate, who appointed counsel for McFadden in September 1986 and set an evidentiary hearing for February 1987.

McFadden was the only witness at the evidentiary hearing. He testified that he had been visiting his sister in Ohio at the time of the robbery and had spent most of his time there with three men who, he claimed, could corroborate his story. However, neither these men nor McFadden's sister nor his trial counsel appeared at the hearing, and McFadden filed no affidavits or other evidentiary material to support his account.

The magistrate recommended denying relief, finding that (1) the trial court had not abused its discretion or denied McFadden due process by refusing a continuance; (2) trial counsel had not been ineffective but had "vigorously and ably" argued motions on McFadden's behalf and defended him at trial; and (3) the lineup, while "subject to criticism," was permissible because the height and weight disparities did not undermine the reliability of the identifications. After reviewing the record, the district court adopted the magistrate's report and denied the petition.

## II.

McFadden claims he "was denied due process of law by being arrested, placed in a lineup, given court-appointed counsel, his motion for continuance denied, arraigned, tried, convicted, and sentenced to life in prison in ten days." The denial of a continuance is the centerpiece of this claim. He also contends that his trial counsel rendered ineffective assistance by failing to support or adequately urge the request for a continuance, to investigate and present McFadden's asserted alibi, and in other respects to put on an adequate defense.

McFadden's counsel, ever burdened, was not given adequate time to prepare for trial. To put a defendant to trial in a

---

1. *See McFadden v. State*, 408 So.2d 476, 483 (Miss.1981) (Hawkins, J., dissenting).

2. *Id.* at 480.

3. 408 So.2d 476.

criminal charge that may result in life imprisonment, represented only by busy court-appointed counsel, with only 10 days' notice, when 20 days is generally allowed for time to reply even to pedestrian civil claims,[4] appears to be at least prima facie a denial of due process. For reasons we will set forth below, however, his conviction may not be set aside by a federal court, for denials of either due process or effective assistance of counsel, unless he can demonstrate that he suffered prejudice as a result of the procedure. The sufficiency of both of McFadden's contentions, therefore, turns on whether he has shown he suffered prejudice from the absence of the witnesses who, he asserts, could corroborate his alibi. Although McFadden contends that the constitutional violations here "by their very nature ... can never be considered harmless," he has not raised any claim, such as the total deprivation of counsel for part or all of the proceedings, that the Supreme Court has said constitutes a ground for reversal without a showing of prejudice.[5]

McFadden's counsel offered two grounds in support of the motion for continuance: (1) McFadden's alibi defense needed investigation and (2) counsel had not had sufficient time to prepare McFadden's overall defense. The magistrate held that the first ground, concerning alibi witnesses, was barred from consideration in federal habeas, under the "procedural default" rule of *Wainwright v. Sykes*,[6] because the Mississippi courts had held the claim procedurally barred for counsel's failure to support it with an affidavit setting forth the witnesses' names, residences, and expected testimony, as is required by Miss.Code Ann.

§ 99–15–29. Because McFadden does not contest the point, we assume, without deciding, that the Mississippi courts did rely on a procedural bar. To obtain habeas review of this claim, therefore, McFadden must show he had "cause" for failing to file the affidavit and was prejudiced from the resulting denial of a continuance.[7]

■ McFadden asserts that counsel rendered ineffective assistance in failing to support the motion for continuance, an assertion that if proved would establish "cause" for the procedural noncompliance.[8] To obtain habeas relief for that ineffective assistance, however, McFadden must show not only that counsel's performance fell below a standard of reasonable effectiveness, but also that there is a "reasonable probability" that, but for counsel's unprofessional errors, the result of the trial would have been different, although he need not prove that a different result would be more likely than not.[9]

To obtain relief on the claim that he should have received an opportunity to investigate and present alibi witnesses, therefore, McFadden must show a reasonable probability that those witnesses would have come forward and presented testimony that would have altered the verdict.

As the second ground for continuance, McFadden asserted that his counsel was generally unprepared to defend him. The magistrate concluded, and we do not doubt, that this argument for a continuance was not procedurally barred. Nevertheless, to obtain relief on this contention, as on the previous one, McFadden still must establish a reasonable probability that counsel would have produced exculpatory evidence that

---

4. Miss.R.Civ.P. 40.

5. *See Satterwhite v. Texas*, — U.S. —, 108 S.Ct. 1792, 1797, 100 L.Ed.2d 284 (1988) (*citing as examples Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978) (conflict of interest in representation); *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (total deprivation of counsel); *White v. Maryland*, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963) (absence of counsel from arraignment proceeding that affected entire trial defense); *Hamilton v. Alabama*, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961) (same)).

6. 433 U.S. 72, 84, 90–91, 97 S.Ct. 2497, 2505, 2508–09, 53 L.Ed.2d 594 (1977).

7. *Id.*

8. *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 2646, 91 L.Ed.2d 397 (1986).

9. *Strickland v. Washington*, 466 U.S. 668, 687, 693–94, 104 S.Ct. 2052, 2064, 2068, 80 L.Ed.2d 674 (1984).

would have altered the verdict had he been given more time to prepare.

■ To warrant federal habeas relief, the denial of the continuance must have been not only an abuse of discretion but also "so arbitrary and fundamentally unfair" that it denied McFadden due process,[10] that is, rendered his trial fundamentally unfair.[11] The petitioner making this claim must show prejudice from the denial of the continuance, and we have therefore denied a writ when, for example, the petitioner could not show he would have been able to locate or produce an exculpatory witness had he received a continuance.[12] Because "the petitioner must show the harmfulness of the error in order to establish the constitutional violation,"[13] the State does not bear the burden, imposed by *Chapman v. California*,[14] of proving the error harmless beyond a reasonable doubt, for *Chapman* applies only when a constitutional violation has been established.[15]

■ The requisite showing of prejudice for claims of denials of due process is the same as that for allegations of ineffective assistance of counsel: the petitioner must establish "a reasonable probability that the granting of a continuance would have permitted him to adduce evidence that would have altered. the verdict."[16]

■ Other than alibi evidence—that is, testimony from the alibi witnesses or documentary evidence, such as motel receipts, of his presence in Ohio—McFadden suggests no exculpatory material that his counsel would have uncovered had he received more time to prepare for trial. Our review of the trial transcript confirms that on the other issues in the case—the reliability of the eyewitness identifications and the suggestiveness of the police lineup—McFadden's counsel put on a competent defense. We conclude that, as with his other claims, McFadden's entitlement to relief depends on whether he has shown a "reasonable probability" that he could have produced evidence, from witnesses or documents, corroborating his alibi to an extent that would have altered the verdict. We now address that central issue.

At the evidentiary hearing, McFadden testified that he and a codefendant, Dolores Edwards, had been in Painesville, Ohio, on the day of the robbery, having arrived there two days earlier to visit his sister, Ernestine Dowdy. He and Edwards had stayed most of the time with his sister and one night at a local motel. McFadden said he had spent two weeks in Painesville, mostly in the company of three men, Charles Ashford, Byron Austin, and Robert Gilmore.

At the time, McFadden said, he knew Ashford and Gilmore only by their nicknames, "Shorty" and "Blue," and did not know Austin's name at all. At his trial in September 1980, therefore, he could provide his counsel only the nicknames. He testified at the evidentiary hearing, however, that a week before the hearing, he had contacted his sister to ask for the men's full names, as well as the name of the motel at which he had stayed, and that within the week, she had provided the information.

McFadden testified that on September 17, 1980, nine days before trial, he had told his counsel his sister's name, the men's nicknames, and that he had stayed in a motel in Painesville, but as far as he knew counsel had not followed these leads.

10. *Hicks v. Wainwright*, 633 F.2d 1146, 1148 (5th Cir.1981); *Skillern v. Estelle*, 720 F.2d 839, 850 (5th Cir.1983); *Gandy v. Alabama*, 569 F.2d 1318, 1323 (5th Cir.1978).

11. *Kirkpatrick v. Blackburn*, 777 F.2d 272, 279 (5th Cir.1985), *cert. denied*, 476 U.S. 1178, 106 S.Ct. 2907, 90 L.Ed.2d 993 (1986) (*citing United States v. Bagley*, 473 U.S. 667, 678, 105 S.Ct. 3375, 3381, 87 L.Ed.2d 481 (1985)).

12. *Fitzpatrick v. Procunier*, 750 F.2d 473, 477 (5th Cir.1985) (*citing United States v. Walker*, 621 F.2d 163 (5th Cir.1980)); *see also Kirkpatrick*, 777 F.2d at 280.

13. *Kirkpatrick*, 777 F.2d at 280.

14. 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

15. *Kirkpatrick*, 777 F.2d at 280.

16. *Id.* at 281.

McFadden himself did not contact his sister, or another sister whom he claimed he had visited in Georgia after leaving Ohio, or a brother who had attended school with Byron Austin, and none of these relatives testified at trial. Indeed, none of the potential witnesses mentioned testified either at the trial or at the evidentiary hearing more than six years later, not even Dolores Edwards, the codefendant McFadden claimed had accompanied him to Ohio. McFadden's trial counsel did not appear at the evidentiary hearing either, and habeas counsel conceded at oral argument before us that he had contacted trial counsel and had decided not to call him to testify at the hearing.

Trial counsel might, of course, have failed to identify or call witnesses or to present other alibi evidence at trial simply because he lacked time to obtain such evidence. Considering the material presented at the evidentiary hearing, however, we think McFadden failed to show a reasonable probability that he would have obtained such evidence or that it would have overcome the State's case, which rested on several positive eyewitness identifications.

None of the asserted alibi witnesses appeared at the evidentiary hearing, although McFadden had six years, during the final five months of which he was aided by competent habeas counsel, to locate and contact them. No evidentiary material of any kind was presented at the habeas hearing to support McFadden's claim. Nor, despite the time available to him, did he produce motel receipts or other evidence to document his story. By McFadden's own admission, once he had talked to his sister it took less than a week for her to give him the names of his associates in Painesville and the motel there at which he had stayed. Both McFadden and Dolores Edwards had the constitutional right not to testify at trial, but we cannot ignore Edwards' failure to appear at the evidently hearing to corroborate McFadden's alibi and McFadden's failure both to explain her nonappearance and to offer any other evidence to support his alibi.

In *Coleman v. Brown*,[17] the Tenth Circuit dealt with a set of facts similar to those here. Coleman, a prisoner under sentence of death, claimed his trial counsel had been ineffective in failing to subpoena an alibi witness whose address Coleman had given counsel. Although the court found the attorney's failure to investigate improper, it concluded Coleman had not shown prejudice:

> Even today, as Coleman faces execution, the name of this alleged witness has not been provided. We have only two affidavits from Coleman's relatives, stating that they spoke to this witness. Weighing this potential evidence, whose very existence is dubious, against the evidence produced at trial on Coleman's whereabouts at the time of the murders, we are unable to conclude that the alibi testimony would have altered the trial's outcome:[18]

Although, therefore, despite the unseemly haste with which McFadden was tried and consigned to prison for life, we conclude that he has not shown prejudice and therefore is not entitled to habeas relief for denials of either due process or the effective assistance of counsel.

### III.

Finally, McFadden argues that the lineup at which the witnesses identified him, and which led to in-court identifications, was impermissibly suggestive and unreliable because he was so much smaller than all the others in the lineup. "The identification of a defendant in a manner that suggests whom the witness should identify," we recently stated, "is a denial of the defendant's right to due process of law."[19]

■ "Unnecessarily suggestive out-of-court identifications are not per se subject to exclusion, however; they are admissible if, under the totality of the circumstances,

---

**17.** 802 F.2d 1227, 1233–34 (10th Cir.1986).

**18.** *Id.* at 1234.

**19.** *Dispensa v. Lynaugh*, 847 F.2d 211, 218 (5th Cir.1988), *citing, among other cases, Foster v. California*, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed. 2d 402 (1969).

they are sufficiently reliable."[20] To evaluate reliability, the court should consider (1) the opportunity of the witnesses to view the criminal at the crime; (2) their degree of attention; (3) the accuracy of their prior descriptions of the criminal; (4) the level of certainty they demonstrated when confronted with the accused; and (5) the length of time between crime and confrontation.[21]

The State makes no claim that the disparities in height and weight would not have been suggestive to the identifying witnesses. It argues, instead, that McFadden has waived an appeal on this ground by failing to object to the magistrate's recommendations concerning it; and that in any event, the identifications were sufficiently reliable to satisfy due process, as the magistrate found.

■ In support of its waiver argument, the State cites *Burley v. Cabana*,[22] which holds that a properly-warned party who fails to file timely written objections to the magistrate's findings of fact may challenge the findings only for "plain error" or "manifest injustice." McFadden did file written objections to the magistrate's recommendation, attacking other findings specifically but not mentioning those concerning the lineup. We need not determine, however, whether this response put McFadden in default under *Burley*. McFadden does not question the historical facts found by the magistrate and by the Mississippi Supreme Court: that the witnesses were positive and emphatic, the store was well-lit, and the robbers were there for some time. Rather, he challenges the ultimate determination, based on these facts, that the identifications were sufficiently reliable to satisfy due process.

Whatever standard of review the court should apply to the underlying facts concerning reliability—"clearly erroneous" under Fed.R.Civ.P. 52(a), "plain error" under

*Burley*, or "not fairly supported by the record" as the habeas statute[23] provides concerning the state court's written factual determinations—the fact-findings of the state courts and the federal magistrate are amply supported by the record. The facts as found point strongly toward a determination of reliability: the witnesses had ample opportunity to view the criminals; the identifications were positive and emphatic; and the lineup occurred only a few weeks after the robbery.

While the height and weight disparities were serious and unnecessary, they are the only tainted aspects of the lineup to which McFadden refers, and alone they are insufficient to overcome the indicia of reliability.

For these reasons, we AFFIRM the judgment of the district court.

---

**20.** *Id.,* citing *Manson v. Brathwaite,* 432 U.S. 98, 109–14, 97 S.Ct. 2243, 2250–53, 53 L.Ed.2d 140 (1977).

**21.** *Neil v. Biggers,* 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972).

**22.** 818 F.2d 414, 417 (5th Cir.1987), *following Nettles v. Wainwright,* 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc).

**23.** 28 U.S.C. § 2254(d).