Richard B. SMITH, Plaintiff-Appellee,

v.

Sheriff Mike SULLIVAN et al.,
Defendants-Appellants.

Hector Salvida AMAYA,
Plaintiff-Appellee,

v.

Sheriff Mike SULLIVAN et al.,
Defendants-Appellants.

No. 76–1289.

United States Court of Appeals,
Fifth Circuit.

May 19, 1977.

George N. Rodriguez, Jr., County Atty., Alan Nasits, Asst. County Atty., El Paso, Tex., for defendants-appellants.

Bruce J. Ponder, Ruth E. Kern, El Paso, Tex., for plaintiff-appellee.

Hector Amaya, pro se.

Before AINSWORTH and CLARK, Circuit Judges, and HUGHES,* District Judge.

HUGHES, District Judge:

This civil rights suit considers conditions of life experienced by inmates of the El Paso County jail. The plaintiffs, Richard B. Smith and others are inmates at the El Paso County jail. They have brought these actions for themselves and as representatives comprising all the inmates of the jail.

The defendants are El Paso County officials charged with responsibility for the maintenance and supervision of the jail; Mike Sullivan, sheriff, T. Udell Moore, county judge, Sam Blackham, ex-county commissioner, Richard Telles, Clyde Anderson, Rogelio Sanchez and Chuck Mattox, County Commissioners. The United States of America was defendant in a third case.

All three cases were combined in one class action and after notice to class members the issues were tried before the Court. Jurisdiction was acquired pursuant to 28 U.S.C. § 1343 which authorizes a federal district court to hear actions under 42 U.S.C. § 1983 to redress any deprivation, under color of state law, of any right, privilege or immunity secured by the Constitution. The plaintiffs seek declaratory and injunctive relief under 28 U.S.C. § 2201 against certain acts, practices, policies and conditions at the El Paso County jail.

Plaintiffs complained that the defendants have deprived them of rights protected by the 1st, 8th and 14th Amendments to the Constitution of the United States. In addition, plaintiffs contend that the defendants have failed to comply with Article 5115 of Vernon's Annotated Texas Civil Statutes regarding the operation and supervision of the county jail.

After a trial without a jury, the district judge, William S. Sessions, filed Findings of Fact in which he found that the practices and conditions in the maintenance and operation of the jail deprived the inmates of rights guaranteed under the First, Eighth and Fourteenth Amendments and by 42 U.S.C., sec. 1983.

He found in part there were no programs for exercise and recreation, programs for education and rehabilitation were inadequate, medical care was insufficient, meals were inappropriately served, supplies were insufficient, facilities inadequate and not maintained, inmates were subjected to cruel treatment by other inmates and neglect by jail personnel, there was a failure to separate younger from older inmates or the convicted from the unconvicted, the disciplinary program was insufficient, and the physical lay-out of the jail failed to comply with the provisions of Art. 5115 of Vernon's Annotated Texas Civil Statutes.

With regard to the financial resources, the District Court found that under a contract between the Director of the Bureau of Prisons and the County of El Paso the federal government paid the county approximately $300,000 a year and the balance came from the County General Fund.

Thereupon on September 25, 1975, the District Judge entered his judgment in which the following program was ordered initiated by January 19, 1976.

1. An *exercise and recreation program* under which (a) each prisoner is taken into sunlight and fresh air at least once each day, and (b) each prisoner is given an opportunity to engage in physical exercise and recreation at least once each day.

2. An *education and rehabilitation* program under which all prisoners shall (a) be provided with adequate reading material, (b) be afforded frequent and regular opportunities for legal, religious or personal counseling, (c) be provided free access, during daylight hours, to an area other than his bunk, (d) each prisoner who is certain or likely to be a prisoner for more than sixty days shall be given a choice

* Senior District Judge of the Northern District of Texas sitting by designation.

among several vocational training courses, and (e) shall be afforded an opportunity to attend religious services on a regularly scheduled basis.

3. A *medical program* under which (a) each incoming prisoner is given a medical examination within 36 hours after arrival, (b) prisoners who are sick or injured from whatever cause are given a medical examination by a licensed physician immediately after the sickness or injury is reported, and (c) physician-prescribed medications are provided to inmates as ordered by the physician.

4. A *food service program* under which (a) meals served to prisoners are served hot, (b) at least one fresh green vegetable, one fresh yellow vegetable, and one serving of meat, or protein-provided meat substitute, is served to each prisoner each day, and (c) adequate clean utensils and serving vessels are provided for each prisoner.

5. A *supply and facilities program* under which (a) clean towels and toilet paper are never unavailable to prisoners, (b) a clean blanket, clean mattress cover, mattress and bunk are never unavailable to each prisoner, (c) no toilet, urinal, shower, washbowl or other plumbing facility is ever out of order for more than 24 hours, (d) adequate hot and cold water is available, (e) supplies necessary for prisoners to maintain themselves in sanitary condition are always available, and (f) one toilet, one shower bath, and one combined lavatory and drinking fountain are provided for each twelve prisoners or fraction thereof confined in any area.

6. A *jail personnel, safety and supervision program* under which (a) every area holding prisoners is visited each hour of the 24-hour day, (b) a communications system whereby any prisoner may call for help from a guard at any time and receive the same within a few minutes, (c) each floor of the jail shall have at least one non-prison-er guard available at all times, and (d) jail personnel are paid on the same scale as patrol personnel of the Sheriff's Department.

7. A *ventilation and lighting program* under which (a) temperatures within prisoner enclosures are within the temperature range of 65° F. to 85° F., and (b) lighting in areas available to prisoners is, during daylight hours, adequate for reading purposes.

8. A *separation of prisoner program* under which (a) those under 18 years of age are always separated from others, (b) witnesses are always separated from others, males are always separated from females, (d) first offenders awaiting trial are always separated from all classifications of convicted prisoners, and (e) prisoners with communicable or contagious diseases are always separated from all others.

9. A *disciplinary program* under which (a) jail rules and regulations, as well as prisoners' rights with respect to violations, are effectively made known to all prisoners and (b) disciplinary procedures shall comply in all respects with *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

Defendants were likewise enjoined effective September 1, 1977, from further violating the provisions of Article 5115 and the Commissioner's Court was directed to provide on or before said date an outdoor area for exercise.

The District Judge did not enter any order directing action by the United States or dismissing it from the case. Further consideration should be given to disposing of the case against the United States.

On December 30, 1975, a motion was filed by the defendants to stay the judgment, based primarily on lack of funds to make the necessary improvements. In denying the motion on January 19, 1976, the Court modified the judgment so as to require the defendants to submit written plans within 30 days for full compliance of certain requirements and in respect to others 60 days.

In response to the modified judgment requiring certain improvements within 30 days the sheriff reported on February 23, 1976, compliance with the following requirements of the judgment of September 25, 1975: adequate reading material, meals served to prisoners hot, certain menu for meals, adequate clean utensils and serving vessels, sufficient supply of clean towels and toilet paper, availability of clean blankets and mattress covers, adequate maintenance of toilets, showers, wash bowls and other plumbing facilities, availability of hot and cold water, supplies for prisoners to maintain themselves in a sanitary condition, separation of prisoners, a disciplinary program, program under which all prisoners are afforded frequent and regular opportunities for legal, religious or personal counseling, program for giving prisoners likely to be incarcerated more than 60 days a choice among several vocational training courses, an opportunity to attend religious services on a regular basis, and adequate medical program.

In response to those items requiring the Defendants to submit written plans for full compliance within 60 days, the Defendants reported to the District Court on March 26, 1976, partly as follows:

2A. An exercise and recreation program under which:

(1) each prisoner is taken into the sunlight and fresh air at least once each day

had not been provided due to lack of space in the present structure;

(2) each prisoner is given an opportunity to engage in physical exercise and recreation at least once each day

had not been implemented due to a manpower shortage making supervision impossible.

D. A jail personnel and supervision program where every area holding prisoners is visited each hour of the 24-hour day by a jail guard

has not been fully implemented due to lack of funds provided to the sheriff.

G. A ventilation and lighting program under which (a) temperatures within the prisoner enclosures are within the temperature range of 65° F. to 85° F.

has not been provided due to the failure of the building structure not being suited to central heating and air conditioning nor to thermostatic control of temperature within the ranges specified.

On February 7, *1977* in a report to the Circuit Court the sheriff reported in addition to the matters in his letter to the District Court on March 26, *1976,* as follows:

In respect to "an education and rehabilitation program under which each prisoner shall be provided free access during daylight hours to an area other than his bunk . . ."

that adequate floor space is not available to provide free access areas.

Positive steps, however, were also reported both to the District Court March 26, 1976, and to the Circuit Court February 7, 1977. These included entertainment within the day rooms into which the cells open— such as television sets and table top games. The Cooks and Bakers School is being continued and an instruction course in maintenance has been added.

With respect to a facility program, an adequate number of toilets, shower baths, lavatories and drinking fountains has been purchased to provide for each twelve prisoners or fraction thereof confined in any area and they were being installed.

The Commissioner's Court has advertised for bids to install an emergency communication system in all tanks of the jail so that any prisoner may call for help from a guard at any time and receive the same within a few minutes.

The number of jailers has been increased but is still insufficient for adequately running the jail. Steam heating and evaporation type coolers have been installed which provide adequate ventilation and temperature control except in unusual situations. Adequate safety fixtures with

bulbs have been purchased and approximately 35% have been installed. Work is under way to install the remaining units. The upgrading has been accomplished by the use of the Jail Improvement Fund derived from monies paid by the United States government for the maintenance of their prisoners.

As of the date of this opinion, it may be assumed the improvements already begun have now been completed.

In addition to what has already been done, an election is set for a Bond Issue to construct a new facility which would incorporate space for the activities for which the sheriff reports no available space.

Defendants in this appeal complain of certain remedial measures ordered by the trial judge contending primarily that the record shows no violation of constitutional rights, negligence alone without more not stating a claim for relief under Sec. 1983. Though isolated incidents of negligence might not constitute sufficient basis for Sec. 1983 jurisdiction, patterns of negligence may.

In *Gates v. Collier*, 501 F.2d 1291 (5th Cir. 1974), we said:

Each factor separately, *i. e.*, overcrowding dormitory barracks, lack of classification according to severity of offense, untrained inmates with weapons, lack of supervision by civilian guards, absence of a procedure for confiscation of weapons, may not rise to constitutional dimensions; however, the effect of the totality of these circumstances is the infliction of punishment on inmates violative of the Eighth Amendment, as determined by the trial court. 501 F.2d at 1309.

In the recent case decided by this Court, *Williams v. Edwards*, 547 F.2d 1206 (5th Cir. 1977), it was said:

The prohibition against cruel and unusual punishment "is not limited to specific acts directed at selected individuals, but is equally pertinent to general conditions of confinement that may prevail at a prison." *Gates v. Collier*, 501 F.2d at 1301. The equitable discretion of the District

Judge is sufficiently broad to provide relief for all that is shown by the proof.

Likewise in *Parker v. McKeithen*, 488 F.2d 553, 5th Cir., *cert. denied*, 419 U.S. 338, 95 S.Ct. 67, 42 L.Ed.2d 65 (1974) it was declared:

[T]here are several cases from this Circuit in which claims under Sec. 1983, alleging violation of Eighth Amendment rights, arising from negligence of state officials have been recognized.

■ Even if it is held there is a deprivation of rights the Defendants complain of lack of funds to implement the trial court's order. This Court recognizes that some of the improvements will be costly but as stated in *Hamilton v. Love*, 328 F.Supp. 1182 at 1194, E.D.Ark. (1971) "inadequate resources can never be an adequate justification for depriving any person of his constitutional rights." *Rozecki v. Gaugham*, 459 F.2d 6, 8, 1st Cir. (1972) held:

" 'Humane considerations and constitutional requirements are not, in this day, to be measured or limited by dollar considerations.' "

Finally this Circuit in *Gates v. Collier*, 501 F.2d 1291 at 1319 (1972) has said:

"Where state institutions have been operating under unconstitutional conditions and practices, the defense [ ] of fund shortage[s] and the inability of the district court to order appropriations by the state legislature, have been rejected by the federal courts."

We believe the District Judge was fully justified in finding that the totality of circumstances in the El Paso jail amounted to a violation of the Eighth Amendment.

Since the trial of this case in the district court many of the matters complained of by the plaintiffs have been corrected. Those are set out in detail in the sheriff's reports to the district court on February 23, 1976 and March 26, 1976, and the report to this Court on February 7, 1977.

We affirm in part and reverse in part.

In order to evaluate some of the issues further, it is necessary to consider them separately.

### Exercise and Recreation Area

At the time of the trial there was no outdoor exercise and recreation area. Inmates, whether convicted or pre-trial, remained in their cells or tanks during their entire stay. Judge Sessions directed that an outdoor area for "exercise and rehabilitation" in the El Paso jail be provided.

A statute, Article 5115.1 of Vernon's Civil Statutes of Texas, passed in 1975, creates a Texas Commission on Jail Standards with authority to "promulgate reasonable rules and procedures establishing minimum requirements for programs of rehabilitation, education and recreation in county jails." Effective January 1, 1977, the Commission adopted rules, among which were the following: "217.19.00 (001) Physical Exercise. Each inmate shall be allowed one hour of supervised physical exercise or recreation at least three days per week. Such exercise should be outdoors if weather and facilities permit. (002) Sunlight. Inmates confined longer than 30 days shall be allowed access to sunlight no less than once weekly."

■ These rules mandate outdoor exercise and recreation where facilities permit and, regardless of facilities, mandate at least some outdoor activity for inmates confined longer than 30 days. When the types of inmates and the lengths of their stays in the jail are considered, it becomes apparent that the District Judge's order is within the guidelines of the rules of the Commission. Federal, state, and city inmates are in the facility. Altogether, there are more than 550 inmates—about 115 federal, over 400 state, and about 35 city. Over 400 inmates are awaiting trial, a wait which could quite easily extend beyond 30 days. Some inmates are awaiting the results of appeals. Anyone familiar with the appellate process is aware that this wait will extend beyond 30 days and could take 2 to 3 years. From 30–35 inmates are convicted misdemeanants serving their sentences, which extend up to 2 years. Finally, about 35 inmates are convicted felons awaiting transportation to another institution. (The numbers in the jail are gradually increasing, according to Sheriff Sullivan.) Thus, all or virtually all of the jail's inmates are incarcerated more than 30 days and are therefore entitled under the Commission's rules to access to sunlight.

Beyond this, Judge Sessions' order to provide an outdoor exercise area only makes explicit what is implicit in the Commission's rules. These rules provide that, for new jail construction, "[s]pace shall be allocated for . . . . inmate programs and activities" such as the physical exercise mandated in the rule quoted earlier. See 217.05.00 (.005). The rules contemplate that inmates must be provided adequate opportunities for outdoor exercise and recreation and it is not necessary to reach the issue of whether the Eighth Amendment alone requires the provision of facilities. However, it should be pointed out that a court has concluded that "confinement for long periods of time without the opportunity for regular outdoor exercise does, as a matter of law constitute cruel and unusual punishment . . ." Sinclair v. Henderson, 331 F.Supp. 1123, 1131 (E.D.La.1971).

■ The District Judge directed that written plans be furnished within 60 days from January 19, 1976, and that the area be completed by September 1, 1977. While this was ample time for defendants to prepare plans it is not feasible to provide adequate permanent facilities by September 1, 1977. A bond election has been set for the latter part of May 1977 and it is hoped it will pass and sufficient funds will be available for an adequate structure. If not some temporary arrangement will have to be adopted and the Judge's order should be amended to provide that some feasible adequately supervised program of regular exercise should be available indoors, in the tanks.

### Diet

■ The diet prescribed of "at least one fresh green vegetable, one fresh yellow vegetable and one service of meat or protein—provided meat substitute" was too restrictive. With such a diet the sheriff has too little choice, although presently the

sheriff says he is serving such a meal. A well-balanced meal, containing sufficient nutritional value to preserve health, is all that is required. Since the time the sheriff reported that the menu as required by the judgment was being provided, he later reported, "The instructor of the El Paso Jail Rehabilitation Program (Cooks and Bakers School) was assigned the additional duty of overall supervision of the kitchen. He spent several weeks in making new menus which increased the menu cycle from 5 days to 21 days." Undoubtedly he will see that well-balanced meals are served.

### Medical Care

■ We also approve the provision of the injunction requiring adequate medical services. The rules of the Jail Standards Commission, particularly those found in Rule 217.13.00, mandate the development and implementation of such services. However, we do not think it necessary to require that all incoming prisoners be given a medical examination within 36 hours of incarceration in the absence of reasonable grounds to suspect that an inmate requires such examination to protect himself or others. *See Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (prison authorities may not be "deliberately indifferent" to medical needs).

■ Testimony at the trial indicated instances in which persons with contagious or communicable diseases, such as scabies or gonorrhea, were incarcerated and left, in the midst of other inmates, without medical attention for a month or more. Obviously, allowing such conditions to exist would violate the required standard of adequate medical services.

### Jail Personnel, Safety and Supervision Program

Under the Judge's order areas having inmates were to be visited regularly, there was to be an improved communication system, non-prisoner guards were to be available and jail personnel were to be paid on the same scale as patrol personnel.

■ Primary responsibility of jails is to protect society from those considered dangerous. Likewise inmates must be protected from each other. Sufficient security is therefore a necessity for any jail.

The evidence revealed that there were no jailers permanently stationed on each floor. They came to the floor only to bring in or take out prisoners, serve meals or bring in medication. There were numerous fights. In one instance a prisoner was stabbed 29 times with sticks, razors and knives. In this instance the wounds required 800 stitches. In other instances an inmate cut his wrist and another had an epileptic fit. Ten to twenty minutes were required before a guard arrived.

There was no supervision in regard to homosexual acts or drunkenness in the jail. Homebrew made out of fruit brought in as food was not unusual.

■ Under such circumstances relating to the safety and supervision of inmates the District Judge did not exceed his authority in directing that a jail guard visit each inmate-occupied area once an hour and one noninmate guard be present on each jail floor at all times. *Jones v. Metzger*, 456 F.2d 854 (6th Cir. 1972) held that the "Court did not abuse its discretion in requiring defendant sheriff to make certain specified changes . . . in his deployment of manpower." (Re-assignment of the sheriff's employees to provide more guards in the jail.)

■ Nor did the District Court exceed its authority when ordering the creation of a communication system. Safeguards against physical abuses against each other at a minimum demands a mechanism to alert authorities for aid. The District Court did not order a specific form of communication system nor do we. Rather it is sufficient to require a system adequate for the purpose intended—the prompt summoning of officials in time of distress.

■ The order to pay guards on the same scale as the patrol personnel exceeded the District Court's authority. Such a command directly interferes with the authority

 

of the Commissioner's Court in setting the amount of the budget. The District Judge did not order a revision of the sheriff's budget already set by the Commissioners, but instead ordered an increase in the budget, a prerogative of the Commissioner's Court. This was an improper exercise of authority.

### Ventilation

■■■ The District Court's order must be limited by deleting the requirement of maintaining a specific temperature range. If the proof shows the occurrence of extremes of temperature that are likely to be injurious to inmates' health relief should be granted, but beyond these limits a federal court may not issue commands in the name of the Constitution.

### Disciplinary Program

■■■ The District Court in its judgment of September 25, 1975, found there was no established procedure for discipline hearings in the El Paso jail. Such lack of procedure violates the due process clause of the Fourteenth Amendment and it was essential to require a procedure which would preserve such rights. *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

On February 23, 1976, the sheriff reported "jail rules and regulations as well as prisoners' rights _ _ _ are effectively made known to all prisoners _ _ _ are printed both in English and Spanish and distributed to each inmate and _ _ _ procedures shall comply in all respects with *Wolff v. McDonnell.*"

While the procedures which the sheriff has implemented may be adequate, the details have not been reported to the District Court or this Court. This should be done in order to determine whether they are adequate and comply with *Wolff v. McDonnell.*

In conclusion, in considering the District Court's order and the remedies required for violations of inmates' rights, we note the aptness of a quote from an opinion written by Chief Justice Burger in the school desegregation context: "Once a right and a vio-

lation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Swann v. Charlotte-Mecklenburg Board of Education*, 402 U.S. 1, 15, 91 S.Ct. 1267, 1276, 28 L.Ed.2d 554 (1971). Judge Sessions has done an admirable job in discerning the scope of his equitable powers and, with few exceptions, stayed within the proper limits.

In the respects indicated the judgment is vacated and remanded for further proceedings not inconsistent herewith. As to all other aspects of the District Court's order the judgment is affirmed.

With these provisions the entire cause will now be remanded to the District Court for retained jurisdiction.