542 So.2d 871 (1989)
Alan McFADDEN
v.
STATE of Mississippi, William A. Allain, Governor; Rice P. York, M. Lee Graves, Roland Weeks, Jennifer Buford, and C. Michael Malski, Members, Mississippi Board of Corrections; Morris Thigpen, Commissioner of Corrections; Donald Cabana, Superintendent, Mississippi State Penitentiary; Dave Newton, Prison Physician; Niceno Cabanero and Millard Cox, Physicians at Mississippi Department of Corrections (Mdoc) Hospital; Donald Williamson, Mississippi Department of Public Health; and John Doe, Medical Person, Mdoc Hospital; Mississippi Department of Corrections; and Mississippi Board of Corrections.
No. 58188.
Supreme Court of Mississippi.
February 1, 1989.
*872 Alan McFadden, Parchman, pro se.
Mike Moore, Atty. Gen. by Harold H. Brittain, Sp. Asst. Atty. Gen., Jackson, for appellees.
*873 Before ROY NOBLE LEE, C.J., and ROBERTSON and ANDERSON, JJ.
ROBERTSON, Justice, for the Court:

I.
This civil action is brought by a prisoner in the custody of the Mississippi Department of Corrections, charging that, with callous indifference to his health and well being, MDOC officials caused him to be exposed to another inmate suffering from active tuberculosis, as a result of which plaintiff now has the disease. He has sued everyone in sight.
Because of our procedural posture  the suit was dismissed below for failure to state a claim, we are concerned with whether and when such a plaintiff may proceed past the pleadings stage in the face of the qualified immunity to such suits enjoyed by the public official defendants.

II.

A.
On September 11, 1981, Alan McFadden was received at the Mississippi State Penitentiary at Parchman, Mississippi, upon his conviction on a charge of armed robbery. At the time McFadden was twenty-nine years of age, was generally healthy, with no communicable diseases. In May of 1986, McFadden, still in the penitentiary, was diagnosed as suffering with tuberculosis.
On May 26, 1986, Alan McFadden[1] commenced this civil action by filing his complaint in the Circuit Court of Hinds County, Mississippi. In his complaint, McFadden charged that on November 8, 1985, he had been placed in Unit 30, C Building, B Zone, and that at that time his health was good and he was suffering from no communicable disease. Prior to that time, Frederick S. Marks, another Parchman inmate, had been placed in Unit 30, C Building, B Zone. The complaint charges that on October 25, 1985, Marks had been diagnosed as suffering from tuberculosis, that it had been determined by prison physicians that Marks should be sent to the University Medical Center in Jackson for examination and treatment, but that Marks had been returned to Unit 30 to await transportation to Jackson which did not take place until November 25. Eight days later Marks was returned to Unit 30, his diagnosis of active tuberculosis having been confirmed at the University Medical Center. Marks was taken to the Department of Corrections (MDOC) hospital and placed in isolation on December 6, 1985, where he remained until January 9, 1986, at which time he was again returned to Unit 30 where he presently resides.
McFadden alleges that he was directly exposed to Marks between November 8, 1985, and November 25, 1985, again on December 5 and 6, 1985, and after January 9, 1986. This exposure occurred in that McFadden and Marks were housed in the same housing unit and on the same zone.
On May 7, 1986, McFadden was tested for tuberculosis. He alleges that the test results "were positive with induration measuring 12 mm." On May 16, 1986, McFadden was taken to the MDOC hospital where his diagnosis was confirmed and he was prescribed medicine INH 300 mg. per day *874 to be taken for a period of one year. The thrust of McFadden's complaint is that he contracted tuberculosis because of exposure to Marks. He does not put all of his eggs in that basket, charging instead in his brief he "does not know whether he was infected by Mr. Marks or some other infected inmate or inmates."
McFadden's complaint names multiple defendants. These include William A. Allain in his capacity as Governor of the State of Mississippi; Rice P. York, M. Lee Graves, Roland Weeks, Jennifer Buford and C. Michael Malski and Isaac Byrd, in their capacities as members of the Board of Corrections of the State of Mississippi; Morris Thigpen in his capacity as Commissioner of Corrections; Donald Cabana, in his capacity as Superintendent of the Mississippi State Penitentiary at Parchman; Dave Newton, Parchman physician; Niceno Cabanero and Millard Cox, physicians at the Mississippi Department of Corrections (MDOC) hospital, Donald Williamson, an employee of the Mississippi Department of Public Health. The complaint also names "John Doe, medical person [sic], MDOC Hospital." Beyond this, the complaint names as a party defendant the Mississippi Department of Corrections, a state agency charged with the responsibility of maintaining and providing for the care, custody, study, training, supervision and treatment of adult inmates. McFadden's less than artfully drawn complaint may arguably be construed to name as additional defendants the State of Mississippi and the Board of Corrections as a state agency.
Although McFadden's pro se complaint is neither precise nor consistent, his claim under state law seems twofold: (1) a negligence action charging the defendants with breach of a duty of reasonable care to protect McFadden from unreasonable exposure to active tuberculosis, and (2) an intentional tort action charging the defendants with wilful and wanton behavior in unreasonably and knowingly exposing McFadden to probable serious harm. The latter claim may arise under federal law as well, 42 U.S.C. § 1983, to be exact. See Marx v. Truck Renting & Leasing Association, 520 So.2d 1333, 1346 (Miss. 1987).
More specifically, the complaint charges that Gov. Allain failed to inspect the MDOC as per his obligations under Miss. Code Ann., § 47-5-93 (Supp. 1986), the members of the Board for failure to provide for the care, custody and treatment of committed offenders, Miss. Code Ann. § 47-5-12 (Supp. 1986) (Repealed May 6, 1988, well after this suit was initiated); Commissioner Thigpen and Superintendent Cabana for similar breaches under Miss. Code Ann. § 47-5-23 (Supp. 1986); and the three physicians for failure to cause all prisoners to be vaccinated, citing Miss. Code Ann. §§ 41-3-17, -59 and 47-5-83 (Supp. 1972) (the latter of which was repealed in 1976), despite knowledge of active tuberculosis.
McFadden's complaint demands an aggregate of $1,625,000 in compensatory damages, $100,000 in punitive damages against each defendant, plus attorney's fees and an injunction for complete medical testing.
On August 22, 1986, all Defendants moved jointly to dismiss the complaint, asserting immunity to suit and charging that the complaint failed to state a claim upon which relief can be granted. See Rule 12(b)(6), Miss.R.Civ.P. On February 24, 1987, the Circuit Court entered its order granting the motion and finally dismissing the complaint.
McFadden timely perfected an appeal to this Court where he charges as error the granting of the motion to dismiss.

III.
The standards which a trial court must employ when considering a motion to dismiss under Rule 12(b)(6) have become quite familiar. The well pleaded allegations of the complaint must be taken as true. See Marx v. Truck Renting & Leasing Association, 520 So.2d 1333, 1339 (Miss. 1987). Those well in mind, together with any defense asserted in the motion to dismiss, the court should not grant the motion unless it appears beyond any reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Grantham v. *875 Mississippi Department of Corrections, 522 So.2d 219, 220 (Miss. 1988); Lester Engineering Co., Inc. v. Richland Water & Sewer Dist., 504 So.2d 1185, 1187 (Miss. 1987); Stanton & Associates, Inc. v. Bryant Construction Co., 464 So.2d 499, 505 (Miss. 1985); see also Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251, 261 (1976). We employ the same standard when on appeal we are asked to consider whether a trial court's granting a motion to dismiss may have been error.

IV.
Persons who have been convicted of crimes do not shed all of their legal rights at the jailhouse door. See, e.g., Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); Gates v. Collier, 349 F. Supp. 881 (N.D.Miss. 1972), aff'd 501 F.2d 1291 (5th Cir.1974). Alan McFadden entered the custody of the Mississippi Department of Corrections a well person and now he has tuberculosis. Implicit in his complaint is the notion that, although he has lawfully been deprived of his liberty, he had a right to be free from exposure to contagious or communicable diseases such as tuberculosis. He charges the several defendants with violations of various rules of the public law, both statutory and common law varieties. We consider his complaint as well under 42 U.S.C. § 1983, though he has not cited the statute by name. Marx, 520 So.2d at 1339.
We analyze such a complaint by reference to familiar principles. In the case of each defendant we seek to identify the source of the duty said to have been owed the plaintiff and then determine the content of that duty, followed by inquiries into causation and damage. We, of course, consider defenses offered by the defendants, again identifying the source of any such defense and its content.
Because of the particular factual context of the present complaint, two general premises, so familiar that they are often taken for granted, need be stated. Our law does not require of a person performance of the impossible or even the practicably impossible. Indeed, we refuse to enforce some privately undertaken duties where they are subsequently seen to require the impossible. See Gulf & Ship Island Railroad Company v. Horn, 135 Miss. 804, 100 So. 381 (1924). Where a plaintiff suffers an injury which a defendant, as a practical matter, had no means of preventing, common sense suggests that the conduct of the defendant could not have been a proximate cause of the plaintiff's injuries.
In the present context, that these defendants, or some of them, may have had duties regarding the health of prison inmates, albeit duties of a preventive nature, does not mean that every prisoner who becomes ill has a right of recovery. We know that in society in general, and within prison populations in particular, some people are going to contract contagious diseases. These defendants, to the extent of their duty, are charged at most to do only that which they reasonably may, given the nature of the prison environment, the facilities and resources available to them. Cf. Hall v. Hilbun, 466 So.2d 856, 872 (Miss. 1985).
Second, it does not follow from the existence of a statutory duty that breach gives rise to personal liability for monetary damages. In some cases, and without digression into general theory, breach may only give rise to the remedy of prospective injunctive relief. Compare Gates v. Collier, supra, with Bogard v. Cook, 586 F.2d 399 (5th Cir.1978). In the case of public officials, there are many occasions where breach of public duty may be remedied only by removal from office or at the polls.
It is too late to doubt that the government has an obligation to provide medical care for those whom it is punishing by imprisonment. In Estelle v. Gamble, cited above, the Supreme Court reasoned:
An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. In the worst cases, such a failure may actually produce physical torture or a lingering death, the evils of most immediate concern to the drafters *876 of the [Eighth] Amendment. In less serious cases, denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose. [citations omitted] The infliction of such unnecessary suffering is inconsistent with contemporary standards of decency as manifested in modern legislation codifying the common law view that "It is but just that the public be required to care for the prisoner, who cannot by reason of the deprivation of his liberty, care for himself."
Estelle, 429 U.S. at 103-04, 97 S.Ct. at 285, 290-291, 50 L.Ed.2d at 259-60. See also Gates v. Collier, 349 F. Supp. at 888, 901.
In Estelle the Supreme Court allowed a prisoner plaintiff to assert a claim against certain prison officials. The Court went on to conclude "that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain ... proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." Estelle, 429 U.S. at 105, 97 S.Ct. at 291, 50 L.Ed.2d at 260.
But, the Supreme Court added an important caveat: "in the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute an `unnecessary and wanton infliction of pain' or to be `repugnant to the conscience of mankind.'" Estelle, 429 U.S. at 105-06, 97 S.Ct. at 291, 50 L.Ed.2d at 261. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment". Estelle, 429 U.S. 105-106, 97 S.Ct. at 292. The Fifth Circuit has cited the Estelle constitutional criteria for evaluating Mississippi prisons with respect to medical attention. Jones v. Diamond, 594 F.2d 997, 1014 (5th Cir.1979); see again Gates v. Collier, 349 F. Supp. at 888, 901.
The Fifth Circuit found for plaintiff-prisoners in Smith v. Sullivan, 553 F.2d 373 (5th Cir.1977). "Testimony at trial indicated instances in which persons with contagious or communicable diseases, such as scabies or gonorrhea, were incarcerated and left, in the midst of other inmates, without medical attention for a month or more. Obviously, allowing such conditions to exist would violate the required standard of adequate medical services." Smith, 553 F.2d at 380. We have no doubt that similar premises obtain under the law of this state. Cf. State of Mississippi for Use of Derrow v. Durham, 444 F.2d 152 (5th Cir.1971); and Farmer v. State for Use of Russell, 224 Miss. 96, 79 So.2d 528 (1955).

V.
Three of the defendants, the State of Mississippi, the Department of Corrections, and the Board of Corrections, as a separate legal entity, enjoy absolute immunity to a suit such as this. In the wake of Pruett v. City of Rosedale, 421 So.2d 1046 (Miss. 1982), the Legislature of this state enacted a law to the effect that claims against the state or any of its agencies accruing prior to July 1, 1987, should be governed by the general law regarding sovereign immunity as it existed prior to the Pruett decision.[2] The law prior to Pruett *877 was that neither the state nor any of its agencies could be sued without its consent. State v. Woodruff, 170 Miss. 744, 766, 150 So. 760, 762 (1933). Neither the State of Mississippi nor the Department of Corrections nor the Board of Corrections has in any way consented to be sued. The complaint insofar as it purports to state a claim against any of these three defendants was correctly dismissed. See Grantham v. Mississippi Department of Corrections, 522 So.2d 219, 222-23 (Miss. 1988); Reed v. Evans, 342 So.2d 290, 291 (Miss. 1976).

VI.

A.
The individuals who have been named as defendants enjoy no such absolute immunity. On the other hand, because they are officers or agents of the State of Mississippi, our law clothes these individuals with defenses not available to private citizens.
When an individual who is a state government official is named as a defendant in a civil action, our law thus directs that he or she enjoy
no immunity to a civil action for damages if his breach of a legal duty causes injury and (1) that duty is ministerial in nature, or (2) that duty involves the use of discretion and the governmental actor greatly or substantially exceeds his authority and in the course thereof causes harm, or (3) the governmental actor commits an intentional tort. Beyond that, a government official has no immunity when sued upon a tort that has nothing to do with his official position or decision-making function and has been committed outside the course and scope of his office.
Grantham, 522 So.2d at 225; Region VII Mental Health v. Isaac, 523 So.2d 1013, 1016-17 (Miss. 1988). They enjoy a like immunity when sued under 42 U.S.C. § 1983. Bogard v. Cook, 586 F.2d 399 (5th Cir.1978). Bogard v. Cook, 586 F.2d 399 (5th Cir.1978). See also Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); Burrell v. Mississippi State Tax Commission, 536 So.2d 848, 863-64 (Miss. 1988).
The "ministerial/discretionary" distinction remains intact, within our law, with qualified immunity protecting only public officials engaged in discretionary decision-making. Region VII Mental Health v. Isaac, 523 So.2d at 1016; State For the Use and Benefit of Brazeale v. Lewis, 498 So.2d 321, 322 (Miss. 1986); White v. City of Tupelo, 462 So.2d 707, 710 (Miss. 1984); Davis v. Little, 362 So.2d 642 (Miss. 1978); State ex rel. Russell v. McRae, 169 Miss. 169, 179, 152 So. 826, 828 (1934).
The means of distinguishing between the two official capacities has been reiterated in Region VII Mental Health;
While no inflexible rule can be laid down for determining in every case whether or not an act of a public officer is ministerial or judicial, the most important criteria perhaps is that [if] the duty is one which has been positively imposed by law and in a manner or upon conditions which are specifically designated, the duty to perform under the condition specified, not being dependent upon the officer's judgment or discretion, the act and discharge thereof is ministerial.
See also Poyner v. Gilmore, 171 Miss. 859, 864-65, 158 So. 922, 925 (1935).

B. Governor Allain

McFadden cites Miss. Code Ann. *878 § 47-5-93 (1972)[3] and § 7-1-5(c) and (d) as authority for Governor Allain's duty to supervise the conduct of all executive officers, inspect the Penitentiary, etc. His lack of action is said to have proximately caused the plaintiff to contract tuberculosis. Without question these duties are discretionary. As such, the governor enjoys a qualified immunity to a civil suit for damages. See Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); State ex rel. Pittman v. Griffin, 450 So.2d 426, 430 (Miss. 1984).
We affirm dismissal of the complaint against Gov. Allain for a different reason. We cannot imagine any set of facts within the scope of the complaint and within the statutory duties of the governor McFadden has identified which would entitle him to relief. More specifically, we cannot imagine that the governor's failure to inspect the penitentiary  taking the allegations of the complaint as true  could have been a proximate cause of McFadden's contraction of the disease of tuberculosis. Conversely, we cannot imagine that the most careful and meticulous inspection by the governor could assure that no inmate at the penitentiary contract tuberculosis. Gov. Allain's motion to dismiss was and should have been granted.

C. Members of the Board of Corrections

The members of the Board of Corrections under state law act in a general policy-making and supervisory capacity with respect to the various correctional institutions of the state. In cases involving the day-to-day operations of a corrections facility, normally the board members will have no potential liability. For example, this Court has upheld, on grounds of qualified immunity, a judgment for the appointed commissioners of the Region VII Mental Health Center for the death of a patient by a co-patient because they had
no role in the roommate selection or supervision of "clients" in the supervised apartment program; in fact, such actions made with respect to the program evidence strongly purely discretionary decisions made by the Board as a whole regarding program establishment and implementation.
Region VII Mental Health Center v. Isaac, 523 So.2d 1013, 1017 (Miss. 1988).
By the same token, members of the Leflore County Board of Supervisors were exonerated in a civil action for damages by a prisoner shot by a trusty guard. Roberts v. Williams, 302 F. Supp. 972, 985 (N.D. Miss. 1969), aff'd 456 F.2d 819, 829-33 (5th Cir.1972). Except a board member become involved in a detailed way in the day-to-day operation of the facility, it seems as a practical matter impossible that his action or inaction may have been a proximate cause of injury. See Jackson v. Hollowell, 714 F.2d 1372, 1381 (5th Cir.1983).
McFadden has pointed to no rule of law that required the board members to become directly involved in the day-to-day operation of the Mississippi State Penitentiary or particularly the activities in Unit 30(C). Nor is there any allegation in the complaint which may reasonably be construed as charging that the board members, or any of them individually, had any direct personal involvement in the day-to-day operations of the penitentiary or Unit 30(C), during the late Fall of 1985 or early months of 1986.
It is clear beyond reasonable doubt that McFadden can prove no set of facts which would entitle him to monetary relief against the individual board members or of any of them. We say this in light of the fact that, within the context of the legal duties imposed upon these board members and the factual allegations of the complaint, we can imagine no set of facts that McFadden may prove that would establish *879 either that the act or omission of any of these board members was a proximate cause of his contracting the disease of tuberculosis or, in the alternative, that pierces the qualified immunity defense enjoyed by these board members. The Circuit Court correctly dismissed the complaint against the individual board members.

D. Commissioner Thigpen and Superintendent Cabana

Commissioner Morris Thigpen[4] and Superintendent Donald Cabana[5] were *880 charged by law with the general supervision and management of the Department of Corrections and the Mississippi State Penitentiary at Parchman, respectively. This Court has recognized the discretionary nature of the position of superintendent at the Mississippi State Penitentiary. Morgan v. Cook, 236 So.2d 749, 750 (Miss. 1970). See also Bogard v. Cook, 586 F.2d 399, 412 (5th Cir.1978). Though not expressly declared by statute, our law imposes upon the Commissioner and Superintendent, respectively, general duties of a supervisory and discretionary nature, for the medical care and treatment of prisoners.
In Bogard the Court of Appeals predicted that Mississippi law would provide broad discretion to Parchman's superintendent based on
the general acceptance of official immunity in Mississippi law, the Mississippi Supreme Court's explicit acknowledgement in Morgan of the breadth of discretion vested in the Parchman superintendent, the importance to Mississippi of attracting competent and energetic leadership at Parchman, and the persuasive intervening authority of Scheuer [v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90, holding that qualified immunity is available to executive officers increasing in scope with the breadth of the officer's discretion and responsibilities predicated on the existence of reasonable grounds for belief formed at the time of the official's action, coupled with good faith belief that the action was proper] and its progeny."
Bogard, 586 F.2d at 417. We this day formally declare that prediction correct.
Since Morgan v. Cook the administrative structure of Mississippi's prison system has changed slightly. (See former law, Section 47-5-25.) In Grantham v. Dept. of Corrections, 522 So.2d 219 (Miss. 1988), a suit by an injured person against the parole board, department of corrections, commissioner of corrections and members of the parole board, this Court held that the commissioner of corrections has substantial discretionary authority but none to grant or deny parole nor a duty to recommend for or against parole. Grantham, 522 So.2d at 224. His/her only duty vis-a-vis parole is to provide adequate support staff. The Court affirmed a summary judgment in favor of the Commissioner because Grantham could not establish the requisite intentional tort or even that he acted substantially at variance with his authority.
At least one recent federal case, however, has established a pierce in the shield of qualified immunity for prison officials. Jackson v. Hollowell, 714 F.2d 1372 (5th Cir.1983). And, the Supreme Court has announced:
Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.
Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). *881 See also Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).
In light of extensive litigation surrounding the icky conditions of Parchman [Gates], the Jackson v. Hollowell court had no problem determining that the defendants could not contend that Jackson's right to be free from inadequately screened trusty guards (one of whom destroyed Jackson's eye) was not established and well known. Jackson v. Hollowell, 714 F.2d at 1376. The Jackson court held that, because of the Gates directive, the superintendent had a duty under state and constitutional law to protect prisoners from trusty guards and that the superintendent breached that duty and his breach was the proximate cause of Jackson's injury. In light of Jackson, we note Gates' direction that prisoners be protected from unreasonable exposure to contagious diseases.
These considerations generally in mind, we return to the content of the qualified immunity defense asserted by Commissioner Thigpen and Superintendent Cabana. If those individuals have committed an intentional tort toward McFadden, they enjoy no immunity defense. See Anderson v. Nosser, 456 F.2d 835, 840-41 (5th Cir.1972). Further, if it may be found that these defendants greatly or substantially exceeded their authority, they enjoy no immunity.
The complaint charges that Commissioner Thigpen and Superintendent Cabana "were grossly negligent in allowing McFadden to be housed with an inmate with active tuberculosis." The complaint further charges that these two defendants acted "wilfully" and "with a wanton and reckless disregard for plaintiff's safety, after discovering that Frederick Marks had active tuberculosis and was housed in the Unit 30(C) Building, B Zone with the plaintiff."
Unlike the board members, these two defendants did have direct authority regarding the day-to-day operations of the Penitentiary. Moreover, these two defendants have lawful authority regarding the assignment, placement, housing and classification of persons incarcerated at the Penitentiary. If it may be shown that the Commissioner of Corrections or the Superintendent of the Penitentiary intentionally caused McFadden to be exposed to the communicable disease of tuberculosis or if it may be shown that either of these two defendants acted with such gross neglect or callous indifference to the well being of McFadden such that their conduct may be fairly described as constructively intentional, they enjoy no immunity to suit. Anderson v. Nosser, 456 F.2d 840-41. If it may further be shown that any such acts or omissions of these defendants proximately caused plaintiff to contract the communicable disease of tuberculosis, he is entitled to recover. Estelle v. Gamble, supra.
Seen in this light, having in mind the standards enumerated above, we cannot say that it is clear beyond reasonable doubt that McFadden can prove no set of facts in support of his claim against Commissioner Thigpen or Superintendent Cabana which would entitle him to relief. The Circuit Court erred when it dismissed so much of the complaint as charged defendants Thigpen and Cabana with intentional and/or constructively intentional and/or grossly negligent actions that proximately caused his injury.

E. The Prison Physicians

We turn now to McFadden's claims against Dave Newton, prison physician and defendants Cabanero and Cox, physicians at the Mississippi Department of Corrections hospital.
McFadden charges that the doctors have breached duties owed under Miss. Code Ann. §§ 41-3-17[6] and 41-3-59[7] (1972).
*882 In an analogous case, Hudson v. Rausa, 462 So.2d 689 (Miss. 1984), a widow of a factory worker who had been prescribed medication in order to prevent the spread of tuberculosis brought action under the wrongful death statute against physician (employee of the State Board of Health). The trial court's grant of summary judgment for the defendants  as distinguished from dismissal on the pleadings  was upheld by this court, ultimately because the physician's acts were found to be within his discretionary authority, so that his qualified immunity was not pierced. Hudson, 462 So.2d at 690. In affirming we reasoned
that the discretion given to the defendants applied, not only to their decisions with reference to instituting a program of control, but also to the treatment administered in carrying out such policies. This was the part of an overall scheme designed for the public good to prevent the possibility of the spread of tuberculosis in the community. Besides, the administration of medical treatment involves the exercise of considerable professional judgment and hence discretion.
Hudson v. Rausa, 462 So.2d at 696.
The plaintiff in Hudson had asserted facts sufficient only for negligent medical malpractice, insufficient as a matter of law to pierce the veil of the qualified public official immunity of these defendants performing their discretionary functions. The plaintiff asserted nothing "which would suggest malice, willful wrongs or acts by these defendants substantially outside their official authority." Hudson, 462 So.2d at 696.
More recently the Court addressed the point in Marshall v. Chawla, 520 So.2d 1374 (Miss. 1988). There, decedent's heirs sued an eleemosynary hospital, its Board and Doctor for the death of a patient. The trial court granted a motion to dismiss because of immunity. This court wrote: The legislature may, by prescribing specific duties of individual state employees, implicitly create tort liability for breaches of them resulting from gross negligence. But no such statute exists for state medical employees." Marshall v. Chawla, 520 So.2d 1374 (Miss 1988). This reaffirmation of Hudson's grant of immunity to state medical staff appears quite broad.
We return now to the allegations of the complaint. The gravamen of the complaint appears not to be a charge of medical malpractice against these doctors, with a possible exception of defendant Newton, who is charged with failing to vaccinate Frederick Marks for communicable diseases upon his entry into the MDOC. Rather, the charge is that these defendants owed a duty of reasonable care to protect McFadden from active tuberculosis and that they breached that duty by confining McFadden and housing him with an inmate who was suffering from active tuberculosis. It is not at all clear that these defendants had any duty or authority with respect to the housing and placement of inmates. Nevertheless, in the present state of the proceedings we do not think we should infer that a recommendation from one or more of these defendants that Marks be placed in isolation would have gone unheeded. We regard the likelihood of McFadden making proof of intentionally tortious conduct by these defendants and toward him necessary of recovery as quite slight. Still, we do not think it may be said that it appears on the face of the complaint beyond reasonable doubt that McFadden can prove no set of facts in support of his *883 claim against these physician/defendants which would entitle him to relief against them. For this reason, the Circuit Court erred when it dismissed the complaint against these defendants.
We reiterate: before plaintiff may recover against these defendants, he must show something "which would suggest malice, wilful wrongs or acts by these defendants substantially outside their official authority." Hudson, 462 So.2d at 696. Moreover, nothing said here should be taken as a retreat from our holding in Marshall v. Chawla that there is no right of recovery against state medical employees for medical malpractice.

F. Donald Williamson

We turn finally to the defendant, Donald Williamson. The complaint charges that Williamson is a member of the Mississippi Department of Public Health and is charged by law to prevent the spread of contagious diseases and where contagious diseases be found, to take actions necessary to suppress them and prevent their spread. The complaint further charges that, after Marks was diagnosed as having tuberculosis at the University Medical Center in Jackson, he was visited by Williamson. Williamson is then charged with gross neglect in allowing McFadden to be housed with an inmate with active tuberculosis.
The short answer here is that McFadden has directed our attention to nothing which would suggest that Williamson, as an official of the State Department of Health, had authority regarding the housing or placement of prisoners in the custody of the Department of Corrections. It appears clear beyond reasonable doubt that McFadden can prove no set of facts in support of his claim against Williamson which would entitle him to relief. The Circuit Court acted correctly when it dismissed the complaint against defendant Williamson.

G. Conclusion

To reiterate and summarize, we hold that the Circuit Court acted correctly when it dismissed so much of the complaint as asserted claims against the defendants Allain, York, Graves, Weeks, Buford, Malski, Byrd and Williamson. On the other hand, the Circuit Court erred when it dismissed the complaint against the defendants Thigpen, Cabana, Newton, Cabanero and Cox; provided, however, that the complaint against these defendants remains viable under state or federal law [42 U.S.C. § 1983] only insofar as it charges each of these defendants with having acted intentionally and wilfully toward plaintiff or with such wanton and gross neglect toward plaintiff so that their acts or omissions should be characterized as constructively wilful or intentional, or acted greatly or substantially outside their authority. Moreover, McFadden may recover against any or all of these remaining defendants only insofar as he may prove by a preponderance of the evidence that any such acts or omissions of such defendants, or any of them, proximately caused him damage.
The judgment of the Circuit Court in favor of defendants Thigpen, Cabana, Newton, Cabanero and Cox is reversed and this case is remanded to the Circuit Court for further proceedings as though the motion to dismiss had been partially denied, consistent with this opinion. Nothing said here should be taken as deciding whether plaintiff may be entitled to proceed to trial against any or all of the defendants remaining in the case; only that plaintiff is entitled to proceed beyond the Rule 12(b)(6) stage consistent with this opinion. See Grantham v. Mississippi Department of Corrections, 522 So.2d 219, 266 (Miss. 1988); McCain v. Northwestern National Insurance Co., 484 So.2d 1001, 1002 (Miss. 1986); cf. Tideway Oil Programs, Inc. v. Serio, 431 So.2d 454, 467 (Miss. 1983).
JUDGMENT DISMISSING CLAIMS AGAINST DEFENDANTS STATE OF MISSISSIPPI, DEPARTMENT OF CORRECTIONS, BOARD OF CORRECTIONS, AND INDIVIDUAL DEFENDANTS ALLAIN, YORK, GRAVES, WEEKS, BUFORD, MALSKI, BYRD AND WILLIAMSON AFFIRMED.
ROY NOBLE LEE, C.J.; HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, ANDERSON and ZUCCARO, JJ., concur.
PITTMAN, J., not participating.
*884 JUDGMENT DISMISSING COMPLAINT AGAINST DEFENDANTS THIGPEN, CABANA, NEWTON, CABANERO AND COX AFFIRMED IN PART; REVERSED IN PART AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, SULLIVAN, ANDERSON and ZUCCARO, JJ., concur.
DAN M. LEE, P.J., dissents.
PITTMAN, J., not participating.
NOTES
[1] Plaintiff McFadden has quite a record. On September 26, 1980, he was convicted in the Circuit Court of Neshoba County of armed robbery and was sentenced to life imprisonment. This Court affirmed. McFadden v. State, 408 So.2d 476 (Miss. 1982). On June 21, 1981, McFadden escaped from custody, only to be recaptured on August 19, 1981. On August 28, 1981, upon his plea of guilty, McFadden was convicted in the Circuit Court of Choctaw County of armed robbery. The Court imposed a thirty year sentence, to be served consecutively with his prior life sentence. Then on February 22, 1982, McFadden was convicted in the Circuit Court of Choctaw County upon separate charges of kidnapping and armed robbery. He received a ten year sentence on each such conviction, these sentences to be served concurrently with his original Neshoba County life sentence.

With time on his hands, McFadden has been an active litigant before this Court. See McFadden v. State, 481 So.2d 859 (Miss. 1986) (memorandum); McFadden v. State, 505 So.2d 1204 (Miss. 1986) (memorandum); and McFadden v. State, 523 So.2d 77 (Miss. 1988). See also McFadden v. Cabana, 851 F.2d 784 (5th Cir.1988).
[2] See General Laws of the State of Mississippi, § 4 of Laws, 1984, ch. 495, as amended by Section 12 of Laws, 1985, Ch. 474, and Section 6 of Laws, 1986, Ch. 438 provides that:

SECTION 4. This act, being Chapter 495, Laws of 1984, as reenacted and amended by Chapter 474, Laws of 1985, as amended by Senate Bill No. 2166, 1986 Regular Session, shall apply only to causes of action that accrue on or after July 1, 1987, as to the state, and on or after October 1, 1987, as to political subdivisions. Causes of action that accrue prior to July 1, 1987, as to the state or, prior to October 1, 1987, as to political subdivisions, shall not be affected by this act but shall continue to be governed by the case law governing sovereign immunity as it existed immediately prior to the decision in the case of Pruett v. City of Rosedale, 421 So.2d 1046, and the statutory law governing sovereign immunity in effect from and after the passage of Chapter 474, Laws of 1985.
This language has been codified as Miss. Code Ann. § 11-46-6 (Supp. 1988). See generally Webb v. County of Lincoln, 536 So.2d 1356 (Miss. 1988); Region VII, Mental Health  Mental Retardation Center v. Isaac, 523 So.2d 1013, 1015-16 (Miss. 1988); Strait v. Pat Harrison Waterway District, 523 So.2d 36, 40 (Miss. 1988).
[3] Section 47-5-93 (1972) imposes a duty of inspection upon the Governor:

It shall be the duty of the governor to make personal inspection of the central facilities of the state correctional system and offenders twice during each and every year at such times as may suit his convenience, and without previous notice to the commissioner, and the commissioner, when required so to do, shall afford all necessary facilities for making such inspection.
[4] The general powers and duties of the commissioner are provided by statute. See Miss. Code Ann. § 47-5-20 (Supp. 1988)

Powers and Duties of Commissioner.
The Commissioner shall have the following powers and duties:
(a) to establish the general policy of the department;
(b) to approve proposals for the location of new facilities, for major renovation activities and for the creation of new programs and divisions within the department as well as for the abolition of the same; provided, however, that the commissioner shall approve the location of no new facility unless the board of supervisors of the county or the governing authorities of the municipality in which the new facility is located shall have had the opportunity with at least sixty (60) days prior notice to disapprove the location of the proposed facility. If either the board of supervisors or the governing authority shall disapprove the facility, it shall not be located in that county or municipality. Said notice shall be made by certified mail, return receipt requested, to the members of the board or governing authorities and to the clerk thereof;
(c) except as otherwise provided or required by law, to open bids and approve the sale of any products and manufactured goods by the department according to applicable provisions of law regarding bidding and sale of state property and according to rules and regulations established by the state fiscal management board; and
(d) to adopt administrative rules and regulations including, but not limited to, offender transfer procedures, award of administrative earned time, personnel procedures, employment practices.
Section 47-5-23. Management and Control of Correctional System To Be Vested In Department of Corrections.
The Department shall be vested with the exclusive responsibility for management and control of the correctional system and all properties belonging thereto, subject only to the limitations of this chapter, and shall be responsible for the management of affairs of the correctional system and for the proper care, treatment, feeding, clothing and management of the offenders confined therein. The Commissioner shall have final authority to employ and discharge all employees of the correctional system except as otherwise provided by law. [Emphasis supplied]
Section 47-5-28. Additional Powers and Duties of Commissioner.
The Commissioner shall have the following powers and duties:
(a) to implement and administer laws and policy relating to corrections and coordinate the efforts of the department with those of the federal government and other state departments and agencies, county governments, municipal governments and private agencies concerned with providing offender services;
(b) to establish standards in cooperation with other state agencies having responsibility as provided by law, provide technical assistance and exercise the requisite supervision as relates to correctional programs over all state-supported adult correctional facilities and community based programs;
(c) to promulgate and publish such rules, regulations and policies of the department as are needed for the efficient government and maintenance of all facilities and programs in accord insofar as possible with currently accepted standards of adult offender care and treatment;
(d) to, upon request, provide the parole board with adequate staff and support resources necessary to conducting parole board business under the guidance of the administrative assistant for parole matters;
(e) to make an annual report to the governor and the legislature reflecting the activities of the department and make recommendations for improvement of the services to be performed by the department;
(f) to perform such other duties necessary to effectively and efficiently carry out the purposes of the department as may be directed by the governor.
[5] Superintendent Cabana's authority and responsibilities derive from Section 47-5-26(5):

The commissioner shall employ a superintendent for the Parchman facility of the Department of Corrections. The superintendent shall be the chief administrative executive and operational officer for the Parchman facility. He shall be directly responsible to the commissioner for the performance of the daily operation of the Parchman facility including, but not limited to, functions related to administrative services and community services at the Parchman facility. He shall have the authority and operational responsibility for administrative services programs and community services programs of the Parchman facility provided for in subsections 1(a) and 1(b) of this section, except for the Office of the Deputy Commissioner for Administration and Finance. However, all functions of the Office of Deputy Commissioner for Administration and Finance Office which relate to the daily operation of the Parchman facility, including standards of employee conduct and employee discipline and purchases which relate to the Parchman facility, shall be subject to the supervision and approval of the superintendent. The superintendent shall have the qualifications listed in subsection 1(b) of this section and shall receive a salary as determined by the State Personnel Board. The superintendent shall reside on the grounds of the Parchman facility and he shall appoint an officer in charge when he is absent.
The superintendent shall develop and implement a plan for the prevention and control of an inmate riot. He shall file a report with the chairman of the Senate Corrections Committee and the chairman of the House Penitentiary Committee on the first day of each regular session of the Legislature regarding the status of such plan.
In order that the grievances and complaints of inmates, employees and visitors of the Parchman facility may be heard in a timely and orderly manner, the superintendent shall appoint or designate an employee at the Parchman facility to hear such grievances and complaints and to report such grievances and complaints to the superintendent. The superintendent shall institute such procedures as are necessary to provide confidentiality to those who file such grievances and complaints.
[6] 41-3-17 Power to make and publish rules and regulations.
The state board of health is authorized to make and publish all reasonable rules and regulations necessary to enable it to discharge its duties and powers and to carry out the purposes and objectives of its creations. It is further authorized to make reasonable sanitary rules and regulations, to be enforced in the several counties by the county health officer under the supervision and control of the state board of health.
McFadden also cites Miss. Code Ann. § 47-5-83 (1972) as authority for the proposition that the defendant-doctors, employees of the Mississippi State Penitentiary Hospital, have a statutory duty to vaccinate all prisoners. § 47-5-83 was repealed in 1976, years before this suit was initiated, and dealt with the general operations and management of the prison hospital at Sunflower Farm.
[7] § 41-3-59 Violation of health rules.

Except as may otherwise be provided, any person who shall knowingly violate any of the provisions of this chapter, or any rule or regulation of the state board of health, or any order or regulation of the board of supervisors of any county herein authorized to be made, shall be guilty of a misdemeanor, and on conviction shall be punished by fine not exceeding fifty dollars, or by imprisonment in the county jail for not more than one month, or by both.